STATE OF HAWAII, Plaintiff-Appellee, *v.* DENNIS M. NAKAMURA, Defendant-Appellant

NO. 7823

(CRIMINAL NO. 53086)

JULY 1, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., and RETIRED JUSTICES OGATA AND MENOR ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY OGATA, J.

This is an appeal brought by Defendant-Appellant, Dennis Minoru Nakamura (hereinafter "appellant"), from his conviction following a jury trial in the Circuit Court of the First Circuit, for the offense of Promoting a Dangerous Drug in the Second Degree, in violation of HRS § 712-1242 (1976). For the reasons set out below, we affirm.

## I.

The instant case against appellant arose from an incident occurring on March 14, 1979 in the City and County of Honolulu. On that date, appellant purportedly distributed a quantity of methadone, defined as a dangerous drug under HRS § 712-1240(1) (1976) and our Uniform Controlled Substances Act, HRS Chapter 329, to an undercover government investigator.[1] Thereafter, on July 3, 1979, appellant was charged with promoting a dangerous drug in the second degree. Trial commenced in the circuit court on November 1, 1979. At trial, appellant argued that, by the actions of the undercover officer, he had been induced to commit the offense charged, Notwithstanding his entrapment claim, appellant was found guilty as charged. Consequently, judgment was entered by the court on April 3, 1980. This appeal followed.

In seeking a reversal of his conviction, appellant here contends: First, that the trial court erred in refusing to give certain of his requested instructions concerning the entrapment defense; second, that the trial court improperly denied him the opportunity to testify about the motive of the undercover officer in effecting his arrest; and third, that the trial court improperly admitted into evidence the methadone recovered for failure by the State to establish a sufficient evidentiary chain of custody.

---

[1] The events occurring on March 14, 1979, as substantially established at trial, are as follows:

On March 14, 1979, John Madinger, an investigator with the State of Hawaii Investigations and Narcotics Control Section, arrested one Robert Walker, a heroin addict, on a previous drug charge. Walker, thereafter, was taken to Agent Madinger's office where he agreed to cooperate with law enforcement officials as an informant.

Consequently, later that day, Walker, under the supervision of Agent Madinger, made three or four phone calls to the residence of appellant. The substance of these calls was Walker's pleas to appellant to procure for him methadone for his drug habit. Appellant testified that after the second or third call, he decided to help Walker because Walker was "hurting."

That evening, Walker, along with Agent Madinger, met appellant at appellant's residence. They entered appellant's car and went for a short drive, during which time a small container holding the purported methadone was exchanged for $25.00. They returned to appellant's residence, whereupon Agent Madinger left the car with the container.

## II.

HRS § 702-237 (1976) reads, in parts relevant to this appeal:

§ 702-237. *Entrapment.* (1) In any prosecution, it is an affirmative defense that the defendant engaged in the prohibited conduct or caused the prohibited result because he was induced or encouraged to do so by a law enforcement officer, or by a person acting in cooperation with a law enforcement officer, who, for the purpose of obtaining evidence of the commission of an offense, either:

\* \* \* \*

(b) Employed methods of persuasion or inducement which created a substantial risk that the offense would be committed by persons other than those who are ready to commit it.

This section makes clear, that when the accused in a criminal prosecution can show, by a preponderance of the evidence, that he had been entrapped into committing the conduct proscribed, he is entitled to acquittal on the charge against him. *State v. Anderson,* 58 Haw. 479, 572 P.2d 159 (1977); *State v. Kelsey,* 58 Haw. 234, 566 P.2d 1370 (1977). In determining whether the accused had been indeed entrapped, *i.e.,* so "induced or encouraged" to commit the offense, we have required that the trier of fact focus exclusively upon the conduct of the law enforcement official while disregarding any predisposition on the part of the accused. *State v. Provard,* 63 Haw. 536, 631 P.2d 181 (1981); *State v. Anderson, supra.* Termed the "objective view" to entrapment, we stated in *Anderson:*

Under the objective view, the focus of inquiry is not on the predisposition of the defendant to commit the crime charged, but rather is on the conduct of the law enforcement officials. . . .

. . . . The language of the section allows for a strictly objective inquiry into the entrapment issue. The main concern is whether the conduct of the police or other law enforcement officials was so extreme that it created a substantial risk that persons not ready to commit the offense alleged would be persuaded or induced to commit it. The focus is on the police conduct and its probable effect on a 'reasonable person.' No attention is directed toward the state of mind of the particular defendant in determining the entrapment issue.

*Id.* at 483-484, 572, P.2d at 162.

Given the foregoing state of the law, appellant contends that the trial court erred in refusing to give his requested instructions Nos. 6 and 8, pertaining to the entrapment defense.[2] He argues that the instructions ultimately given by the court, without benefit of the requested instructions, were unclear and could have conceivably misled the jury to his prejudice.[3] Specifically, he alleges that the jury

---

[2] Appellant's requested instructions Nos. 6 and 8, rejected by the trial court, read as follows:

[No. 6] The defense of entrapment is available to a defendant even though evidence may show that the Defendant may have had a predisposition to commit the crime for which he stands charged.

Regardless of a Defendant's past record or present predisposition to engage in a certain type of penal conduct, he will be afforded a defense if he was induced or encouraged to engage in such conduct by methods which create a substantial risk of persuading a person who was not ready to commit the offense.

[No. 8] Entrapment occurs where the idea to commit a crime did not originate in the mind of the Defendant but instead originated in the mind of a police officer or his agent and was suggested by the police officer or his agent to the Defendant for the purpose of inducing him to commit the crime in order to entrap him and cause his arrest.

If you find that the Defendant was entrapped you must find the Defendant not guilty.

[3] The instructions given by the trial court to the jury on the entrapment issue read:

The defense of entrapment, if proven, entitles a defendant to an acquittal even though the prosecution has proven the commission of an offense. While the prosecution must prove the commission of the offense, it is the defendant who has the burden of proving the defense of entrapment. However, while the prosecution must prove its case beyond a reasonable doubt, the burden of the defendant to prove entrapment is only to prove it by a preponderance of the evidence. This means that the defendant must prove that it was more likely than not that entrapment took place.

Entrapment occurs when a law enforcement officer or a person working in conjunction with a law enforcement officer induces or encourages the commission of an offense through the use of methods of persuasion which create a substantial risk that the offense would be committed by persons other than those who are ready to commit it.

Applied to this case, the issue on entrapment involves two questions: One, was the defendant induced or encouraged by the undercover officer to sell methadone to him? Two, if so, was the conduct of the undercover officer in inducing or encouraging the sale such that it would have probably caused a sale even by a person who was not ready to do so. If, based on the preponderance of the evidence, your answers to both of these questions is "yes," then the defense of entrapment has been proven, and it is your duty to acquit. And if your answer to either of the question is "no," then it is your duty to convict.

The fact that the Defendant may have known those involved in the drug culture, and according to his own admission to being a past user of marijuana and heroin does not establish that he could not or was not entrapped.

was not clearly instructed on the proper weight to be given any evidence of appellant's predisposition to commit the offense.

.·"It is well settled that the trial court must correctly instruct the jury on the law . . . . This requirement is mandatory to insure the jury has proper guidance in its consideration of the issues before it." *State v. Feliciano,* 62 Haw. 637, 643, 618 P.2d 306, 310 (1980). In addition, we are mindful that "[o]n appeal, instructions must be considered in their entirety to determine whether error was committed." *Id.* at 641, 618 P.2d at 309.

Having reviewed the instructions given by the trial court, we find no misstatement or ambiguity as to the standard to be applied. We realize that, for the most part, instructions should not merely parrot the language of the statute. *State v. Nuetzel,* 61 Haw. 531, 551, 606 P.2d 920, 932 (1980). However, far from simply repeating the terms of HRS § 702-237 (1976), the given instructions fully apprised the jury, in language easily understandable, of the law to be applied in its deliberation.

Moreover, as we have often times stated in the past, "where a given proposition if law is requested to be given in an instruction, the instruction may properly be refused where the same proposition is adequately covered in another instruction that is given." *State v. Stuart,* 51 Haw. 656, 660-661, 466 P.2d 444, 447 (1970). *See State v. Bush,* 58 Haw. 340, 569 P.2d 349 (1977); *State v. Faafiti,* 54 Haw. 637, 513 P.2d 697 (1973). We find that this is the case here. We observe that the substance of appellant's requested Instructions Nos. 6 and 8 concerning appellant's predisposition to commit the offense is adequately covered in the trial court's instruction.

Consequently, we conclude that the trial court did not err in refusing to give the requested instructions in question.

III.

At trial, appellant attempted to testify about a purported meeting between himself and Agent Madinger occurring approximately two months after his arrest. The State objected to the admission of this testimony on relevancy grounds. In his offer of proof, appellant argued that the offered testimony would reveal the motive and

design of Agent Madinger in singling him out for arrest.[4] He asserted that this testimony would be crucial in establishing his entrapment defense. The court apparently found this unpersuasive and consequently sustained the State's objection. Appellant contends that this constituted reversible error by the court. Upon a review of the record, we do not agree.

"It is well settled that the trial court is vested with discretion regarding the admissibility of evidence at trial and such a decision will not be reversed absent an abuse." *State v. O'Daniel,* 62 Haw. 518, 527, 616 P.2d 1383, 1390 (1980). Moreover, "even where error occurs, there will be no reversal where on the record as a whole, no prejudice to appellant has resulted. . . . Where there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are deemed harmless." [Citations omitted.] *State v. Rivera,* 62 Haw. 120, 127-128, 612 P.2d 526, 531-532 (1980).

As we noted, the proffered testimony had been ruled inadmissible under a somewhat broad finding that it was irrelevant. "No precise test of relevancy is furnished by the law. All relevant evidence is admissible unless some rule compels its exclusion. Evidence is relevant if it tends to prove a fact in controversy or renders a matter in issue more or less probable." *State v. Smith,* 59 Haw. 565, 567, 583 P.2d 347, 349 (1978).[5]

---

[4] Appellant, in his briefs submitted to this Court, contends that the prohibited testimony would have revealed: That Agent Madinger knew of appellant's status as an ex-heroin addict undergoing rehabilitative treatment; that if he represented to appellant that he was in dire need of methadone, appellant would get it; and that Agent Madinger had purposely caused appellant's arrest so that he could induce appellant into becoming an informant for him.

[5] We note under our newly adopted evidence code, the Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (1980 Special Pamphlet), the following is provided:

*Rule 402 Relevant evidence generally admissible; irrelevant evidence inadmissible.* All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

Further, relevant evidence is defined:

*Rule 401 Definition of "relevant evidence."* "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence

Here, the purported meeting occurred two months after appellant's arrest. The purpose of the meeting was to allegedly recruit appellant as a government informer. Appellant apparently wished to tie this conversation with the fact of his arrest to portray a calculated scheme by the government to entrap him. Therein, he asserts, lies the relevancy of the testimony to the entrapment issue.

We think appellant places entirely too much emphasis on the motive of the government in effecting his arrest. As we stated earlier, the focus of the entrapment defense is the conduct of the law enforcement officials in soliciting the cooperation of the accused. The inquiry is whether the methods of persuasion on the part of the officials were so extreme that it would induce a "reasonable man" to commit the offense charged. The motives of the agents in this case then, while reprehensible, is wholly without relevance to the issue in light of the rather mechanical determination to be applied. As such, we find that the court did not err in disallowing the testimony.

## IV.

Appellant, as his third assignment of error, argues that the trial court erred in admitting into evidence the container and the purported methadone contained therein (hereinafter "State's Exhibit 2-A"), because the State had failed to establish a sufficient chain of custody.

Essential for the introduction of real evidence, as a foundational requirement, is that a sufficient chain of custody be established. *See generally* McCormick's Handbook on the Law of Evidence, § 212, pp. 527-528 (2nd ed. 1972); Rule 901, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (1980 Special Pamphlet). However, on appeal, "[u]nless [the] decision to admit evidence over a chain-of-custody objection constitutes a clear abuse of discretion, it will not be overturned." *State v. DeSilva,* 64 Haw. 40, 42, 636 P.2d 728, 730 (1981), quoting *State v. Mayes,* 286 N.W.2d 387, 391 (Iowa 1979).

---

to the determination of the action more probable or less probable than it would be without evidence.

However, insofar as the Hawaii Rules of Evidence became effective on January 1, 1981, it does not govern the resolution of this appeal. *But see* State v. Kim, 64 Haw. 598, 645 P.2d 1330 (1982).

In the past, we have recognized that where the exhibit sought to be introduced is a chemical or drug in liquid or powder form which is readily susceptible of alteration or substitution, courts have been strict to require a showing of a chain of custody that minimizes the possibility that tampering has occurred.[6] *State v. Vance,* 61 Haw. 291, 303, 602 P.2d 933, 942, *reh. den.,* 61 Haw. 661, 602 P.2d 933 (1979); *State v. Olivera,* 57 Haw. 339, 344, 555 P.2d 1199, 1202 (1976). This Court, however, has not been so strict as to require that all possibilities of tampering be negated. We require only that it be established "that it is reasonably certain that no tampering took place, with any doubt going to the weight of the evidence." *State v. Vance, supra* at 304, 602 P.2d at 942; *State v. Olivera, supra* at 345, 555 P.2d at 1203. *See State v. DeSilva, supra; State v. Antone,* 62 Haw. 346, 615 P.2d 101 (1980).

Hence, we have observed that even where there has been the possibility that others may have had access to the exhibit, there exists the "reasonable certainty" that tampering has not occurred. *State v. DeSilva, supra.*

The custodial chain, as advanced at trial, is as follows:

On March 14, 1979, following the transaction between Agent Madinger and appellant, Agent Madinger, along with another agent, returned to his office. There, Agent Madinger dated and initialled State's Exhibit 2-A, placed it into a plastic bag (hereinafter "State's Exhibit 2-B"), also dated and initialled, and placed it overnight in the office safe. The following day, Agent Madinger

---

[6] Moreover, in the area of narcotic and drug offenses, we have required a sufficient chain of custody only between the time of recovery till chemical analysis, absent a specific allegation of tampering. State v. Vance, *supra.* As we stated in *Vance:*

Establishing the chain of custody is essential to show that the substance analyzed was the substance seized from the defendant. [Citation omitted.] After chemical analysis, however, the substance itself is not vital evidence.

*Id.* at 304, 602 P.2d at 942.

Appellant argues here, that the very fact that State's Exhibit 2-A was substantially altered in appearance when introduced at trial constituted a specific allegation that tampering had occurred which required the State to establish a sufficient custodial chain up to the time of trial. Whether or not we agree is immaterial for we believe, that from an examination of the record, the State had established a sufficient chain of custody from the time Agent Madinger received the evidence from appellant till its introduction at trial.

transferred both exhibits to a secured storage part of an office refrigerator. Until State's Exhibit 2-A was sent for chemical analysis, it remained under the exclusive control of Agent Madinger and the evidence custodian in his office.

On May 7, 1979, approximately two months later, State's Exhibit 2-A, along with State's Exhibit 2-B, was sent to San Francisco, by registered mail, for chemical analysis. It arrived on May 9, 1979, and was received by Julian Grooms, an analytical chemist with the Drug Enforcement Administration. On May 17, 1979, Grooms analyzed the substance and found it to be methadone. After analysis, Groom replaced State's Exhibit 2-A into State's Exhibit 2-B and heat-sealed both in another plastic envelope. On May 22, 1979, the exhibits were returned, again by registered mail, to Honolulu. During that period while the exhibits were in San Francisco, it remained under the exclusive control of the Drug Enforcement Administration.

On May 29, 1979, Agent Madinger received the exhibits through the mails. From that date to the day of trial, State's Exhibit 2-A remained in the continuous custody of Agent Madinger. However, of import is the fact that at trial, it was shown that State's Exhibit 2-A had been substantially damaged; the lid of the container had been bent and cracked and the liquid, once held, was gone, with only a pink residue remaining.

Having reviewed the foregoing, and in consideration of the statements of law, we find that a sufficient chain of custody had been established so as to render State's Exhibit 2-A admissible into evidence.

The mere fact that the instant exhibit had been in damaged form at trial does not, we think, render it, as a matter of course, inadmissible. Nor do we think that it will necessarily raise the suggestion that any substitution or tampering took place. It is not difficult to envision, through fortuitous circumstances, a fragile container, as is State's Exhibit 2-A, being broken in transmit through our mails, with its contents escaping and thus being reduced to residue.

Accordingly, as we have not found any error by the trial court as advanced by appellant, the conviction is affirmed.

*Christopher D. Ferrara (Robinson & Ferrara* of counsel) on the briefs for defendant-appellant.

84

*Duffy J. Mendonca,* Deputy Prosecuting Attorney, on the brief, for plaintiff-appellee.