STATE OF HAWAII, Plaintiff-Appellee, *v.* HIDEO MIYAHIRA, Defendant-Appellant

NO. 10720

(CRIMINAL NO. 60525)

JUNE 18, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant-Appellant Hideo Miyahira (Defendant) appeals from his conviction of murder, Hawaii Revised Statutes (HRS) § 707-701 (1976). The issues on appeal are as follows:

(1) Whether an unauthorized communication by the trial court bailiff to the jury foreperson deprived Defendant of his constitutional

right to a fair trial;

(2) Whether the trial court's refusal to admit a defense witness's testimony regarding a past specific act of aggression by the victim was reversible error; and

(3) Whether the trial court's instructions on (a) the issue of burden of proof on Defendant's defense of manslaughter,[1] and (b) on the jury's consideration of manslaughter as an included offense were in error.

We answer no to all three issues and affirm.

## FACTS

On May 14, 1984, Defendant, his girlfriend, Noreen Wada (Noreen), and their two-year-old son, Akio, went to Kewalo Basin at about three o'clock in the afternoon. After eating at the Kewalo Ship's Galley Restaurant, Noreen took Akio to the beach while Defendant played dice in an area called the net house to the rear of the restaurant. At about ten o'clock that evening, Noreen entered the net house and told Defendant that the victim, Isaac Sanga (Sanga), was waiting for him outside the restaurant.

When Defendant went out of the restaurant, Sanga engaged him in conversation. Sanga was attempting to collect a $4,000 debt Defendant owed to one Yu Suk Nacua. Defendant testified that Sanga told him he was to pay Sanga $2,000 by the following week, and then Sanga pointed to Noreen and Akio and said, "You got a nice family over there . . . anything can happen." Defendant also thought Sanga was going to hit

---

[1] Hawaii Revised Statutes (HRS) § 707-702(2) (1976) provides:

Manslaughter. * * *

(2) In a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the view-point of a person in the defendant's situation under the circumstances as he believed them to be.

Manslaughter is not a true defense within the meaning of the Hawaii Penal Code. *See State v. Dumlao,* 6 Haw. App. 177, 715 P.2d 822 (1986). "[I]t is really a mitigating factor. Intentionally killing while under the influence of extreme emotional disturbance does not present a true 'defense,' for the punishment is merely reduced through the mechanism of denominating the crime as 'manslaughter' rather than 'murder.'" *Id.* 6 Haw. App. at ___, n.2, 715 P.2d at 825, n.2.

 

him.

Sanga later went into the restaurant. Defendant took a gun from the trunk of his car, put it in his pocket, and waited for Sanga to come back out. As Sanga walked towards him, Defendant saw him carrying a small handbag, similar to ones used by off-duty police officers to carry their service revolvers. Defendant knew that Sanga was an ex-policeman and believed the handbag contained a weapon. Defendant testified that Sanga said, "I'm gonna get you, you asshole." Believing he could not successfully run from Sanga, Defendant testified that he pulled out his gun and fired a warning shot to scare Sanga off or to "stop him."

When the shot was fired, Sanga ran and hid behind his car. Defendant walked over to Sanga's car and climbed onto the hood looking for Sanga. Sanga yelled, "Shoot, fucker, shoot," and threw an object at Defendant, who then fired several shots at Sanga, killing him. Defendant testified that he thought Sanga had a gun but could not remember whether Sanga fired any shots at him.

After a jury trial, Defendant was found guilty of murder on April 17, 1985.

I.

### BAILIFF'S COMMUNICATION TO FOREPERSON

After the jury had reached a verdict, and while the jurors were waiting for the attorneys and the judge to return to the courtroom, the trial court bailiff told the jury foreperson that if the jury was polled they should all express agreement with the verdict or either the bailiff or the foreperson would "get in trouble." There is nothing in the record to indicate any of the other jurors heard the bailiff's remarks. However, for purposes of this opinion, we will assume that it was overheard by other jurors. After the verdict was announced in open court, the jury was polled and all jurors indicated agreement. On April 29, 1985, Defendant moved for a judgment of acquittal or, in the alternative, a new trial based on the bailiff's communication with the jury foreperson and the trial court's failure to instruct the jury that State had the burden of proof on the manslaughter issue. After a hearing, the lower court found that the bailiff's statement was not coercive in nature and had no improper influence upon the jury, but was really a "discussion concerning basically the mechanics of polling when they came back to the court."

A defendant is constitutionally guaranteed a right to trial by an "impartial jury." U.S. Const. Amends. VI and XIV; Hawaii Const. art. I, § 14; *State v. Keliiholokai,* 58 Haw. 356, 569 P.2d 891 (1977); *State v. Messamore,* 2 Haw. App. 643, 639 P.2d 413 (1982). The guaranty includes a trial by a jury that was not influenced by unauthorized and improper contact with non-jurors. *State v. Pokini,* 55 Haw. 640, 526 P.2d 94 (1974). "The integrity of jury proceedings must not be jeopardized by unauthorized invasions." *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656 (1954).

Defendant relies on *Remmer v. United States, supra,* to support his argument that the communication in the instant case was unauthorized and "presumptively prejudicial." However, the two cases are distinguishable, and the distinction is fatal to Defendant's contention. In *Remmer,* the communication took place during trial and before the jury's deliberations. Similarly, in *State v. Pokini, supra,* and *State v. Messamore, supra,* also cited by Defendant, the unauthorized communication occurred at times during those proceedings that were earlier than the communication in the instant case. Here, the communication occurred after the deliberations had been completed and the verdict had been reached and signed.

Defendant has not cited us to any cases in which it has been held that a defendant's right to a fair trial was prejudiced by an unauthorized communication occurring after deliberation but before polling, or that such a communication was "presumptively prejudicial." Our view that the time when the communication was made is critical is supported by *United States v. Shepherd,* 576 F.2d 719, *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 155 (1978).

In *Shepherd,* one of four incarcerated felons charged with murder of a fellow inmate was acquitted after a joint trial. After the verdict had been announced, but before the jury was polled, the trial judge, in the presence of the jury, made remarks to the acquitted defendant indicating the judge's disagreement with the acquittal and his belief that the defendant had merely benefitted from having a "fine lawyer." Shepherd, one of the convicted co-defendants, made a motion for mistrial before the jury was polled, which was denied. On appeal, Shepherd argued that he was entitled to a new trial because his right to polling was impaired. The conviction was affirmed.

The *Shepherd* court held that some of the judge's remarks were in error, which required the remarks to be tested for prejudice to the

defendant under the harmless error rule. *Id.* 576 F.2d at 723. Holding that, while the right to poll the jury is substantial, it is not of constitutional dimensions, *id.* at 724, the *Shepherd* court employed the "harmless error" rather than the "harmless beyond a reasonable doubt" rule to determine the prejudice to the defendant. *Id.* The court stated the proper inquiry to be " 'what effect the error had or reasonably may be taken to have had upon the jury's decision.' " *Id.* (quoting *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946) ). The error must be viewed in relation to everything that happened and should be held harmless where it can be said with fair assurance that the judgment of the jury was not swayed by the error. *Shepherd,* at 723-724.

Defendant argues that although the communication occurred after the verdict had been reached, the jury was not discharged from its duties until after it had been polled and the verdict was filed with the court. Thus, in Defendant's view, the communication occurred during the trial and was presumptively prejudicial. We disagree.

In *Shepherd, supra,* the court held that the time when the communication took place and the evidence of guilt were relevant to the inquiry whether the objectives designed to be achieved by the polling process were achieved despite the error. The fact the judge's remarks were made not during trial but after the jury's deliberation was found to be significant. *Id.* at 724. The court observed that the possibility that the judge's remarks intimidated one or more jurors into suppressing their dissent against the verdict, or not indicating a change of mind, was far less likely than the possibility that the same error, if it occurred during trial would have affected the verdict. *Id.* The judge's remarks did not defeat the purpose of polling, which is to assure the court and the parties that a unanimous verdict has been reached and to give each juror an opportunity to indicate assent to the verdict in open court. *Id.* at 725.

Viewing the circumstances of this case in the light of the principles established by *Shepherd,* we do not believe that Defendant was prejudiced in his right to a fair trial by an impartial jury. The bailiff's communication took place after the jury had reached its verdict and contained nothing that could have conceivably influenced the jury's deliberations. In response to Defendant's contention that the communication could have affected any juror who might have wanted to change his or her mind, we refer to *Shepherd.*

The right of a defendant to poll the jury is of course recognized and long established, but from a practical standpoint, experience of the

years has shown that its benefit to a defendant in effecting a change or modification of the jury's verdict is substantially nonexistent.

*Id.* at 724 (quoting *Martin v. United States*, 182 F.2d 225, 227 (5th Cir.), *cert. denied*, 340 U.S. 892, 71 S.Ct. 200, 95 L.Ed. 647 (1950)).

Finally, the record in this case indicates that the jury deliberated for less than three hours on the verdict. They began deliberations at 3:46 p.m. on April 16, 1985, and the verdict was announced at 9:35 a.m. on April 17. Although the record does not reflect when the jury recessed its deliberations on the evening of April 16, we take judicial notice of the practice in the first circuit criminal courts of ending jury deliberations and excusing the jury sometime between 4:30 and 5:30 p.m., and reconvening between 8:15 and 9:00 a.m. the following morning. On that basis, it is more than reasonable to infer that less than three hours were spent in actual deliberations. That fact, together with the extent and nature of the evidence indicates Defendant was not prejudiced by an unauthorized communication occurring after it reached its verdict. *Shepherd, supra.*

Defendant argues in his reply brief that we should hold that the right to poll the jury is protected under article I, section 14 of the Hawaii State Constitution and adopt the "harmless beyond a reasonable doubt" rule. He cites *State v. Pokini, supra,* and *State v. Messamore, supra,* as standing for the proposition that unauthorized communications to a jury are violative of the constitutional right to a fair trial by an impartial jury. As noted above, *Pokini* and *Messamore* are factually distinguishable from the instant case. We are not convinced that sound reasoning warrants the extension of our State's constitutional protections beyond those of the federal constitution in the matter of jury polling. *Cf. State v. Miyasaki,* 62 Haw. 269, 614 P.2d 915 (1980).

Defendant also contends in his reply brief that the guidelines of *Shepherd* were not met in the instant case because of other errors in the court below and the lack of overwhelming evidence. He has not directed us to those errors, and we will not search the record to find them. Assuming he refers to the errors he has urged on appeal, they are not such as to defeat the application of *Shepherd's* principles. Moreover, as will be discussed below, the evidence is more than sufficient in the instant case to satisfy *Shepherd.*

## II.

### EVIDENCE OF VICTIM'S SPECIFIC AGGRESSIVE ACT

Defendant argues that he should have been allowed to introduce testimony through an independent witness of an act of aggression committed by Sanga approximately five years prior to the incident in this case. Citing *State v. Lui,* 61 Haw. 328, 603 P.2d 151 (1979), Defendant argues that the testimony was admissible because there was a dispute as to who was the first aggressor. We do not believe the trial court abused its discretion in barring the testimony. *State v. Buffalo,* 4 Haw. App. 646, 674 P.2d 1014 (1983).

The purpose of the testimony was to support Defendant's argument that he thought he or his family were in danger and he acted in self-defense by showing the jury that Sanga had engaged in violence in the past. However, Defendant himself testified that he knew of Sanga's reputation for violent behavior and the testimony was cumulative at best. Defendant was not prejudiced by the trial court's refusal to allow the testimony, and the trial court did not clearly exceed the bounds of reason or disregard rules or principles of law or practice to the substantial detriment of Defendant. *Id.*

Moreover, a close review of the record indicates clearly that Sanga was not the aggressor. Concededly, the confrontation was triggered by Sanga's attempt to "collect" the debt owed by Defendant. But aside from threats that could cause Defendant to be fearful of future actions by Sanga, there is nothing to indicate that Sanga was threatening imminent bodily injury to Defendant or his family, and the evidence indicates Sanga was unarmed. Furthermore, after Defendant fired the first shot Sanga sought safety behind his car. Rather than retreat to safety himself Defendant went after Sanga and killed him.

Defendant argues that there is proof that Sanga could have been the aggressor because, through a videotaped deposition introduced by Defendant, one witness testified he saw Sanga shoot at Defendant However, a close examination of that testimony does not support the argument. The witness testified that he did not see the beginning of the shooting incident. He heard shots and when he looked the victim was hiding behind a car. He saw the victim throw something at Defendant, who was on the hood of the car, and saw Defendant shoot the victim. The testimony does not support the argument that Sanga was the aggressor or shot at Defendant.

## III.

## JURY INSTRUCTIONS

### A.

Defendant argues that the trial court committed reversible error because it did not instruct the jury that State had the burden of proving beyond a reasonable doubt that at the time he shot Sanga Defendant was not under extreme emotional disturbance for which there was a reasonable explanation.[2]

State agrees that it has the burden of proof. However, State argues that under the principles of *State v. McNulty,* 60 Haw. 259, 588 P.2d 438 (1978), *cert. denied,* 411 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), the court did not commit reversible error. We agree.

On appeal, the trial court's jury instructions must be considered as a whole, and where the instructions presented relevant law to the jury and were not erroneous, insufficient, inconsistent, or misleading, no error will be found. *State v. Nakamura,* 65 Haw. 74, 648 P.2d 183 (1982); *State v. McNulty, supra; State v. Churchill,* 4 Haw. App. 276, 284, 664 P.2d 757, 763 (1983). Here, the instructions taken as a whole were not erroneous, *see United States v. Harvey,* 701 F.2d 800 (9th Cir. 1983); *see also* 1 Devitt and Blackmar, *Federal Jury Practice and Instructions,* § 18.05 (3rd ed. 1977), insufficient, or misleading.

In *McNulty, supra,* the defendant, charged with murder, requested and then withdrew an instruction that the State had the burden of proof on the issue of self-defense, and the charge to the jury did not contain such a specific instruction. On appeal, the supreme court examined the instructions as a whole and found them less than ideal. However, because the defendant had voluntarily withdrawn his requested instruction and did not object to the court's failure to instruct the jury that the State had the burden of proof, the supreme court held that he was precluded from raising the failure of the trial court to give such an instruction as a ground for reversal on appeal, and the general burden of proof instruction was sufficient. *Id.* 60 Haw. at 266, 588 P.2d at 444.

---

[2]*See* footnote 1, *supra.*

Although *McNulty* does not deal with manslaughter instructions, it is, in our view, dispositive of the issue of the court's instructions in the case at bar. In this case, as in *McNulty*, Defendant submitted and then withdrew an instruction that placed the burden on the prosecution to prove that when he caused the death of Sanga Defendant was not under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation, and failed to object to the omission of such an instruction by the trial court. The trial court instructed the jury that State had the burden of proving all elements of the offense of murder beyond a reasonable doubt,[3] and, although it did not give a specific instruction regarding the burden of proof for the manslaughter defense, it did instruct the jury that manslaughter was a defense to murder.[4] Additionally, the jury was given general burden of proof instructions.[5]

The circumstances here are precisely the same as in *McNulty*. Consequently, Defendant cannot assign the court's failure as a ground for

---

[1]The instruction read in pertinent part as follows:

There are three material elements to this offense [murder], each of which the State must prove beyond a reasonable doubt. If the State has done so, you are to convict. If the State has not done so, you are to acquit. The three elements are:

(1) That the Defendant did cause the death of Isaac Sanga by shooting him with a firearm;

(2) That the Defendant did so either intentionally or knowingly[;]

(3) That the Defendant did not act in self defense

[4]The instruction read as follows:

In a prosecution for murder, it is a defense, which reduces the offense to manslaughter, that the Defendant was, at the time he caused the death of the other person, under the influence of extreme mental or extreme emotional disturbance for which there is a reasonable explanation.

[5]The trial court's general instructions on the burden of proof read as follows:

This presumption of innocence is not a mere slogan but an essential part of the law; and it places upon the prosecution the burden of proving the defendant guilty beyond a reasonable doubt of every material element of the crime charged

\* \* \*

The jury will always bear in mind that the law never imposes upon the accused the burden or duty of calling any witnesses or producing any evidence, because he is presumed to be innocent, and it is up to the prosecution to prove Hideo Miyahira guilty beyond a reasonable doubt.

appeal. Rule 30(e), Hawaii Rules of Penal Procedure (1981).[6]

B.

Defendant contends that it was plain error for the trial court to instruct the jury as follows:

> In this case, you must first determine whether the defendant is guilty or not guilty of murder. If you find that the offense of murder has not been proved from the evidence beyond a reasonable doubt, you may then consider whether the defendant is guilty or not guilty of the offense of manslaughter.

In *State v. Reyes,* 5 Haw. App. 651, 706 P.2d 1326 (1985), we held that, where the jury is to be permitted to consider included offenses, it must be instructed that it may decide the defendant's guilt on the included offense only if it finds the defendant not guilty of the offense charged. *Id.* 5 Haw. App. at ___, 706 P.2d at 1330.

Affirmed.

*John M. Tonaki,* Deputy Public Defender (*Richard W. Pollack,* Deputy Public Defender, with him on the briefs), for defendant-appellant.

*Peter M. Wilkens,* Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellee.

---

[6]Rule 30(e), Hawaii Rules of Penal Procedure (1981), provides:

Instructions and Objections.   The court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the refusal to give, or the modification of, an instruction, whether settled pursuant to subdivision (b) or subdivision (c), of this rule, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. Objections made to instructions at the time they were settled shall be deemed preserved even though not restated after the court has instructed the jury.

*See also* HRS § 641-16 (Supp. 1984) which states:

Judgment; no reversal when. * * *

Except as otherwise provided by the rules of court, there shall be no reversal for any alleged error in the admission or rejection of evidence or the giving of or refusing to give an instruction to the jury unless such alleged error was made the subject of an objection noted at the time it was committed or brought to the attention of the court in another appropriate manner