900 P.2d 1286

Todd James RAINES, Petitioner–Appellant,

v.

STATE of Hawai'i, Respondent–Appellee.

No. 16705.

Supreme Court of Hawai'i.

July 11, 1995.

As Amended on Grant of Clarification or Reconsideration July 25, 1995.

Peter Van Name Esser (Willard J. Peterson with him on the briefs, of Peterson & Esser), Honolulu, for petitioner-appellant.

Caroline M. Mee, Deputy Pros. Atty., Honolulu, for respondent-appellee.

Before KLEIN, Acting C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and YIM,* Circuit Court Judge, in place of MOON, C.J., Recused.

KLEIN, Acting Chief Justice.

Todd James Raines was convicted of murder and two counts of forgery in 1985. He

* Circuit Court Judge Yim, who heard oral argu-    ment in this case, retired on December 30, 1994.

received a sentence of life imprisonment with the possibility of parole and two concurrent five-year prison terms. Although Raines filed a timely notice of appeal, he later withdrew it. Subsequently, Raines filed a petition for post-conviction relief, which the circuit court denied. Raines now appeals from the circuit court's findings of fact, conclusions of law, and order denying his petition for post-conviction relief.

## I. BACKGROUND

Raines moved to Hawai'i from California in April 1984. In August of the same year, Raines's girlfriend, Joann Byers, joined him in Hawai'i. Raines and Byers subsequently rented an apartment from Raymond Wassinger. The "apartment" was a house that had been divided into two units; Wassinger lived in the second unit. A few weeks after moving in, Raines killed Wassinger by striking five blows to his neck and head with a machete. After dumping Wassinger's body in a ditch alongside the Likelike Highway and cleaning up the scene of the crime, Raines and Byers left the apartment and stayed with friends in Waik'ik'i for a few days. During that time, Raines cashed two checks worth $1100.00 that were drawn on Wassinger's account. Raines and Byers then had their friends purchase airline tickets for them under assumed names and moved to Seattle.

On February 6, 1985, the O'ahu grand jury indicted Raines and Byers on charges of murder and forgery. On March 7, 1985, Raines and Byers were arrested in Seattle and extradited to Hawai'i. Less than two weeks later, Byers entered into a plea agreement whereby the prosecution agreed to drop the murder and forgery charges against her, in exchange for giving testimony against Raines and pleading guilty to a charge of hindering prosecution.

Deputy Public Defender Milton Tani was assigned to represent Raines. On the eve of trial, Raines's father obtained private counsel, Erick T.S. Moon, to handle the defense. When jury selection began on July 29, 1985, Tani moved to withdraw as counsel. The court denied Tani's motion to withdraw and required him to remain as standby counsel because (1) Moon was not yet prepared to handle the trial alone, (2) the court did not want to grant a continuance after jury selection had already begun, and (3) the prosecution had already subpoenaed dozens of witnesses for the trial. Moon and Tani jointly represented Raines for the remainder of the trial.

During opening statements, the prosecutor made the following comments:

> So Todd Raines, *we know*, killed Ray Wassinger to get approximately $1,100 from him....
>
> ....
>
> After hearing all the evidence, ... I will ask that you retire to the jury deliberation room, [and] return verdicts of guilty as charged in this case. *I believe* the evidence will be overwhelming. The evidence will be overwhelming as to what happened. The credible evidence will be overwhelming as to what happened.

(Emphases added.) The prosecutor also mentioned Raines's failure to make a statement after his arrest. Defense counsel objected, whereupon the court gave a cautionary instruction regarding a defendant's constitutional right to remain silent and directed the jury to disregard the prosecutor's prior statement. The prosecutor then indicated that Raines declined to waive this constitutional right, prompting the defense to renew its objection. The court cautioned the prosecutor not to persist, but ruled that a mistrial was not necessary in light of the cautionary instruction.

Raines later testified that he was greatly upset by the fact that both he and Byers had caught Wassinger peeping in their windows several times. Raines also claimed that Wassinger entered their portion of the house on at least two occasions; Raines claimed

*See* Hawai'i Revised Statutes (HRS) § 602–10 (1985).

that he was able to force the bigger and stronger man out on these occasions because Wassinger was drunk. Raines further testified that, on the day of the killing, he went on a hike and brought along a cane machete to cut through thick bushes and to cut down bananas and papayas. When he returned from the hike shortly after dark, at about 8:00 p.m., Raines was carrying the machete in a canvas beach chair. He saw someone at the bedroom window and confronted that person. What began as "rage" turned to fear because that person was a big man. During the ensuing scuffle, Raines realized that the man was Wassinger. After Wassinger purportedly came at him with raised hands, Raines stepped back, drew the machete out, and chopped it straight forward into Wassinger's face. Raines then testified that he spun his hands around and struck three rapid blows to the back of Wassinger's head and neck, completing a martial arts technique that he had learned.

After Raines testified, the State presented three rebuttal witnesses and both sides rested. Closing arguments followed but were not recorded. Raines does not allege that his trial counsels were ineffective in any way during the presentation of the evidence or during closing arguments.

Raines was subsequently convicted as charged and sentenced to life imprisonment with the possibility of parole for murder, and two concurrent five-year prison terms for forgery; he was also ordered to pay restitution for extradition expenses, funeral expenses, and the amount obtained with the forged checks. Raines filed a timely notice of appeal on October 17, 1985. On October 23, 1985, Tani withdrew as counsel, leaving Moon as sole appellate counsel. On March 18, 1986, Raines signed an affidavit approv-

ing the withdrawal of his appeal, which was withdrawn the following day.

On July 15, 1991, Raines filed a petition for post-conviction relief pursuant to Rule 40 of the Hawai'i Rules of Penal Procedure (HRPP).[1] At a subsequent hearing on the petition before Judge Richard Au, both Raines and Moon testified. Judge Au orally ruled as follows:

> On balance, it would appear that the defendant did have meritorious grounds for an appeal on the matters, the legal matters, raised by the petitioner. But I'll find the material allegations for statements of the affidavit filed by the defendant in appeal No. 10970 to be true.

> And, therefore, on that basis, I will find that the matter of the appeal was discussed with Mr. Raines, Mr. Michael Raines [the petitioner's father], and the defendant himself. That Mr. Raines, the Defendant Petitioner, was informed and believed that Mr. Michael Raines had informed Mr. Moon that he was no longer willing to pay attorneys fees, authorized Mr. Moon to withdraw the appeal.

> I also find pursuant to Paragraph 7 that Mr. Moon was requested, but was unable to say what the chances of success on appeal were. And that the defendant did concur with the withdrawal of the appeal. He did understand the same and he understood that the judgment would stand.

> I'll find the waiver to have been voluntarily, intelligently and knowingly made. And that information provided to the defendant was within the range of competence under the demand of attorneys in criminal cases under the circumstances. And therefore, I'll deny the Petition. I'll ask Mr. Takata [the prosecutor], that you

---

1. HRPP Rule 40(a)(3) (1994) provides that post-conviction proceedings:

    shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. An issue is waived if the petitioner *knowingly and understandingly failed to raise it and it could have been raised* before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, *and the petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.* There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure. (Emphases added.)

prepare findings and the order of the court.

Judge Au thereafter retired from the bench before the findings and order could be filed. On January 21, 1993, Judge I. Norman Lewis signed the order "for" Judge Au. The relevant Findings of Fact (FOF) and Conclusions of Law (COL) stated:

> [FOF] 6. Petitioner was convicted of murder and forgery. An appeal was discussed by Erick Moon with Petitioner and his father Michael Raines. A notice of appeal was filed. Petitioner understood his right to appeal but intelligently, knowingly, and voluntarily relinquished that right as evidenced by the Withdrawal of Appeal, Affidavit of Todd James Raines, and Order filed on March 18, 1986. Petitioner understood that if his appeal was withdraw [sic], that the judgment of conviction for murder and forgery would stand.

> [COL] 1. Petitioner intelligently, knowingly, and voluntarily withdrew his appeal and thereby waived any and all grounds for appeal.

> [COL] 2. Milton Tani's and Erick Moon's representation of Petitioner was within the range of competence demanded of attorneys in criminal matters.

> [COL] 3. Milton Tani and Erick Moon raised all defenses crucial to Petitioner's case and asserted Petitioner's constitutional rights.

## II. *STANDARDS OF REVIEW*

■ The scope of a trial court's authority is a question of law reviewed under the right/wrong standard. *See In re Judicial Determination of Death of Elwell,* 66 Haw. 598, 670 P.2d 822 (1983). *See also In re Estate of Holt,* 75 Haw. 224, 857 P.2d 1355 (questions of law reviewed under right/wrong standard), *reconsideration denied,* 75 Haw. 580, 863 P.2d 989 (1993).

■ The disposition of an HRPP Rule 40 petition is based on FOF and COL.

HRPP Rule 40(g); *Domingo v. State,* 76 Hawai'i 237, 243, 873 P.2d 775, 781 (1994). Factual findings are reviewed under the clearly erroneous standard. *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994). An appellate court may freely review conclusions of law and the applicable standard of review is the right/wrong test. *Id.*

## III. *DISCUSSION*

### A.

In civil trials, "[t]he normal rule is that only the judge who conducted the trial may enter a decision in a case." *In re Judicial Determination of Death of Elwell,* 66 Haw. 598, 601, 670 P.2d 822, 824 (1983) (citing *In re App'n of Pioneer Mill Co.,* 53 Haw. 496, 497 P.2d 549, *reh'g denied,* 53 Haw. 573 (1972)). A proceeding under HRPP Rule 40 is similar to a civil bench trial in that the court is required to enter findings of fact and conclusions of law in support of its decision. HRPP Rule 40(g); Hawai'i Rules of Civil Procedure (HRCP) Rule 52(a). Moreover, "[t]he danger that one judge might misinterpret a prior judge's informal notes or oral statements, or err in attempting to judge the credibility of witnesses from a transcript," *Pioneer Mill,* 53 Haw. at 506 n. 5, 497 P.2d at 555 n. 5 (citing *Bromberg v. Moul,* 275 F.2d 574 (2nd Cir.1960)), applies equally to civil trials and HRPP Rule 40 proceedings.

■ Because of this danger, we hold that when a judge other than the one who presided over a HRPP Rule 40 hearing signs the FOF/COL and order, the order must ordinarily be vacated. *Cf. In re Judicial Determination of Death of Elwell, supra.* However, because the evidence in the record clearly demonstrates that Raines is entitled to post-conviction relief, we remand this case to the circuit court for entry of an order granting Raines's petition and ordering a new trial.

### B.

■ Raines claims that he did not "knowingly and understandably" waive his statuto-

ry right to appeal the judgment against him, and that his trial counsels provided ineffective assistance by: (1) failing to request appropriate instructions with respect to reckless manslaughter, extreme emotional disturbance manslaughter, and defense of others; and (2) failing to make adequate objections to allegedly inappropriate comments made by the prosecutor during opening statements.[2]

### 1.

The resolution of ineffective assistance claims sometimes requires the consideration of evidence outside the trial record—for example, testimony of trial counsel regarding the reasons for the acts or omissions that occurred at trial. *Cf. State v. Silva,* 75 Haw. 419, 439, 864 P.2d 583, 592 (1993) (acknowledging "that not every trial record is sufficiently developed to determine whether there has been ineffective assistance of counsel"). Because appellate courts do not ordinarily consider evidence outside the record, a postconviction proceeding is the most appropriate forum in which to resolve ineffective assistance claims.

During the HRPP Rule 40 proceeding in the instant case, Moon initially indicated that he understood extreme emotional disturbance manslaughter to be an affirmative defense for which the defendant had the burden of proof. *But see* HRS § 701–115(3) (1985).[3] Moon later clarified his understanding by stating that the defendant bears the burden of *production* as to facts supporting such a claim but that the State retains the ultimate burden of disproving extreme emotional disturbance beyond a reasonable doubt.

If Moon and Tani did understand the burden of proof, we can discern no rational basis for their failure to request instructions on the burden of proof with respect to the mitigating defense of extreme emotional disturbance—especially where they had already made the tactical decision to request jury instructions on this mitigating defense as well as the defense of justification.[4] *See, e.g., State v. Kupau,* 76 Hawai'i 387, 394, 879 P.2d 492, 499 (1994) (discussing tactical considerations bearing on the decision whether to

2. Raines also argues that he has a constitutional right to an appeal and that the burden is on the State to prove that he knowingly and intelligently waived that right. Raines is wrong on both counts. There is no constitutional right to an appeal, *Briones v. State,* 74 Haw. 442, 459, 848 P.2d 966, 975 (1993), and under HRPP Rule 40(a)(3) the failure to appeal creates a rebuttable presumption that the petitioner failed to raise appealable issues. Nevertheless, "[w]here petitioner has been represented both at trial and on direct appeal, no waiver of the issue of trial counsel's performance occurs because no realistic opportunity existed to raise the issue on direct appeal." *Briones v. State,* 74 Haw. 442, 459, 848 P.2d 966, 975 (1993).

3. HRS § 701–115(3) provides in pertinent part that "[a] defense is an affirmative defense if ... [i]t is specifically so designated by the Code or another statute[,] or ... [i]f the Code or another statute plainly requires the defendant to prove the defense by a preponderance of the evidence." There is no indication in the Hawai'i Penal Code or any other statute that the mitigating defense of extreme emotional disturbance is an affirmative defense to a charge of murder.

4. The instructions provided by the court were, in pertinent part, as follows:
   A person commits [the] offense [of murder] if he intentionally or knowingly causes the death of another person.

There are two material elements to this offense, each of which must be proven beyond a reasonable doubt by the State. If the State has done so, you are to convict. And if the State has failed to do so, you are to acquit.

The two material elements are:
1, That the defendant caused the death of another person ... by slashing him with a sharp instrument;
2, that the defendant did so either intentionally or knowingly.

If you find that the offense of murder has been proved from the evidence beyond a reasonable doubt, you must then consider whether the defendant is guilty of the reduced offense of manslaughter.

In a prosecution for murder it is a defense which reduces the offense to manslaughter that the defendant was, at the time he caused the death of the other person, under the influence of an extreme emotional disturbance for which there is a reasonable explanation.

. . . .

The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

Under [Hawai'i] law the lawful use of force to protect oneself is a complete justification for conduct which would otherwise be criminal. The justification of self defense is a complete defense to murder and is also a complete defense to manslaughter.

present the jury with included offense instructions). Raines's testimony that he acted out of "rage" when he realized that Wassinger was once again peering at Byers—a contention that is supported by Byers's testimony that Raines suspected Wassinger of voyeurism—could have been relied upon by the jury to find that Raines acted while under the influence of an extreme emotional disturbance.[5] *See* HRS § 707–702(2) (Supp.1992).[6]

### 2.

■ Based on the instructions provided by the circuit court, *see supra* note 4, there is a substantial risk that the jury may have mistakenly concluded that Raines had the bur-

den of proving that he acted under an extreme emotional disturbance.[7] In *State v. McNulty*, 60 Haw. 259, 588 P.2d 438 (1978), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), this court acknowledged the *possibility* that "[i]n failing to specifically allocate the burden of disproving self-defense to the [prosecution], the instructions could have permitted the jury to believe that the appellant, having raised the issue of justification, was obligated to prove it." *Id.* at 264, 588 P.2d at 444 (emphasis added) (citing, inter alia, *United States v. Corrigan*, 548 F.2d 879 (10th Cir.1977)). *See also* HRS § 702–205(b) (1985).[8] Nevertheless, relying on HRPP Rule 30(e) and cases from other

----

....

You must consider the reasonableness of the accused's belief that he had to use deadly force to protect himself against death or serious bodily injury from the standpoint of a reasonable person placed in the position of the accused.

....

If you as members of the jury find that any evidence of self defense has been raised, then the State must prove beyond a reasonable doubt that the accused did not act in self defense. If you find that the State has failed to prove beyond a reasonable doubt that the accused did not act in self defense, you must find him not guilty of any offense.

5. Because we are convinced that the trial court committed plain error by failing to properly instruct the jury that the prosecution had the burden of proving beyond a reasonable doubt that Raines was *not* under the influence of an extreme emotional disturbance when he intentionally caused the death of Wassinger, *see infra* section III.B.2., we need not consider whether Raines's trial counsels provided ineffective assistance. Raines's claim of ineffective assistance with respect to allegedly improper comments made by the prosecutor is without merit. Thus, the remainder of our analysis in this case focuses on the doctrine of plain error.

6. HRS § 707–702(2) provides that:
[i]n a prosecution for murder in the first and second degrees it is a defense which reduces the offense to manslaughter, that the defendant was, at the time he [or she] caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he [or she] believed them to be.

"The provisions of HRS § 707–702(2) ... do not describe an offense as such; they serve, instead, to reduce murder to manslaughter when mitigating mental or emotional disturbances are present." *State v. Pinero [Pinero I]*, 70 Haw. 509, 523, 778 P.2d 704, 714 (1989) (internal quotation marks omitted).

7. The jury was specifically instructed that there were two elements to murder which had to be proven beyond a reasonable doubt: that Raines caused Wassinger's death and that he did so intentionally or knowingly. The jury was then instructed that acting under the influence of an extreme emotional disturbance was a defense in a murder prosecution. No burden of proof was specified with respect to this defense. *See, e.g., Hawaii [Hawai'i] Standard Jury Instructions,* Criminal No. 5.02 (December 1991) ("The prosecution must prove beyond a reasonable doubt that the defendant was not, at the time he caused the death of *[decedent]*, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation.") (Brackets and emphasis in original.). Moreover, the jury was given a specific instruction with respect to the burden of proof for self-defense. The jury could have reasonably concluded that unless a specific burden of proof instruction was given for a particular defense, the defendant would have the burden of proving it. Of course, this would be an erroneous conclusion.

8. HRS § 702–205(b) provides in pertinent part that "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as ... [would n]egative a defense (other than a defense on the statute of limitations, lack of venue, or lack of jurisdiction)."

jurisdictions,[9] the *McNulty* court held that "because he failed to object at trial, appellant is now precluded from raising the failure of the court to give such an instruction as a ground for reversal on appeal, and *the court's general burden of proof instruction will be deemed sufficient to cover the issue of self-defense.*" 60 Haw. at 266, 588 P.2d at 444 (emphasis added), *cited with approval in State v. Pinero [Pinero II]*, 75 Haw. 282, 291, 859 P.2d 1369, 1374 (1993).

■ On second look, we hold that *McNulty* was incorrectly decided. We hold further that where, as here and in *McNulty*, the jury has been given instructions on a defense other than an affirmative defense, but has not been instructed that the prosecution bears the burden of proof beyond a reasonable doubt with respect to negativing that defense, substantial rights of the defendant may be affected and plain error may be noticed. *See Kupau*, 76 Hawai'i at 393, 879 P.2d at 498 (citing *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74–75 (1993)). Accordingly, we now overrule *McNulty*.

Notwithstanding our disapproval of the dictum regarding *McNulty* in *Pinero II, see* 75 Haw. at 291, 859 P.2d at 1374, our analysis in the latter case is still correct. In *Pinero II*, we reviewed a mistyped instruction that omitted reckless manslaughter as an offense to be considered by the jury. We observed that notwithstanding HRPP Rule 30(e), erroneous instructions *may* be grounds for reversal despite counsel's failure to object at trial. *Id.* at 291–92, 859 P.2d at 1374 (citing HRPP Rule 52(b)).[10] "Where instructions were not objected to at trial, if the appellant overcomes the presumption that the instructions were correctly stated, the rule is that such erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *Pinero II*, 75 Haw. at 292–93, 859 P.2d at 1374–75 (citing *State v. Pinero [Pinero I]*, 70 Haw. 509, 525, 778 P.2d 704, 716 (1989)).[11] After reviewing the instructions, verdict forms, and the record as a whole, we held that the trial court did not commit plain error because the jury was adequately in-

---

9.  HRPP Rule 30(e) provides in pertinent part that "[n]o party may assign as error the giving or refusal to give, or the modification of, an instruction, . . ., unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

    All the cases cited in *McNulty* for the proposition that plain error need not be noticed where the trial court omitted a specific burden of proof instruction without objection, *see* 60 Haw. at 264–65, 588 P.2d at 443–44, dealt with self-defense or the defense of entrapment. Most of these cases are distinguishable from *State v. Pinero [Pinero II]*, 75 Haw. 282, 859 P.2d 1369 (1993). *See* discussion *infra*. For example, the cases cited in *McNulty* involved circumstances where defense counsel stated during closing argument, without objection, that the prosecution had to prove the absence of self-defense beyond a reasonable doubt; the omission was very unlikely to affect the jury's determination; construing the record as a whole, the instructions were not misleading; the defense was inapplicable; or, the defense was not supported by the facts. *But see United States v. Levin*, 443 F.2d 1101 (8th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 260 (1971) (based on the record, whether or not the defendant was guilty was not a close question); *Esposito v. United States*, 436 F.2d 603, 604 (9th Cir.1970) (claim that burden of proof instructions on entrapment defense deemed to have been waived).

10. HRPP Rule 52(b) provides in pertinent part that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

11. In *Pinero I*, the jury had been instructed that if it found that murder had not been proved beyond a reasonable doubt, it could then consider the lesser included offense of manslaughter. Although the jury instructions defined both reckless manslaughter and the mitigating defense of extreme mental or emotional disturbance, it said nothing about when the latter should be considered. On appeal, this court stated that "[t]he trial court's error here was one of omission; it failed to fully explain the significance of HRS § 707–702(2) and to guide the jury in its consideration of the mitigating defense." 70 Haw. at 525, 778 P.2d at 714.

    Accordingly, the *Pinero I* court expressly overruled *State v. Miyahira*, 6 Haw.App. 320, 721 P.2d 718 (1986), which had held that it was not error for the trial court to instruct the jury first to determine whether the defendant was guilty of murder and, if the jury found murder had not been proved beyond a reasonable doubt, then to consider whether the defendant was guilty or not guilty of manslaughter as described by HRS § 707–702(2). 70 Haw. at 525 n. 9, 778 P.2d at 715 n. 9. The ICA's decision in *Miyahira*, which involved jury instructions substantially similar to those given in the instant case, *see supra* note 4, was based primarily on *McNulty*. *See Miyahira* 6 Haw.App. at 328–30, 721 P.2d at 724–25.

formed that it had the option of finding Pinero guilty of reckless manslaughter as opposed to murder in the first degree. 75 Haw. at 290–97, 859 P.2d at 1373–76.

> We recognize that
> [t]his court's power to deal with plain error is one to be exercised with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*Kupau,* 76 Hawai'i at 393, 879 P.2d at 498 (quoting *Kelekolio,* 74 Haw. at 514–15, 849 P.2d at 74–75) (citation omitted). Nevertheless, based on our review of the jury instructions in the instant case, *see supra* notes 4 and 7, we hold that the circuit court's failure to provide burden of proof instructions with respect to the mitigating defense of extreme emotional disturbance manslaughter constituted plain error. *See State v. Hoey,* 77 Hawai'i 17, 38–39, 881 P.2d 504, 525–26 (1994) (observing that it is ultimately the trial court's responsibility to ensure that the jury is properly instructed); *Kupau,* 76 Hawai'i at 392–96, 879 P.2d at 497–501.

## IV. *CONCLUSION·*

For the reasons discussed in section III.B., *supra,* we vacate the circuit court's order denying Raines's motion for post-conviction relief with respect to the murder conviction and remand for a new trial.