**Andres Guadalupe VILLARREAL, Petitioner–Appellant,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent–Appellee.**

No. 92–4197.

United States Court of Appeals, Fifth Circuit.

March 15, 1993.

Andres Guadalupe Villarreal, pro se.

Josette L. Cassiere, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, LA, for respondent-appellee.

Before KING and EMILIO M. GARZA, Circuit Judges, and COBB *, District Judge.

PER CURIAM:

Andres Guadalupe Villarreal, whose federal parole was revoked, appeals the district court's dismissal of his habeas corpus petition. Finding no constitutional error, we affirm.

## I.

In 1984, Andres Guadalupe Villarreal was indicted in the Southern District of Texas for drug possession, including marijuana and heroin. Villarreal ultimately agreed to a plea bargain whereby he pled guilty to possession of marijuana; he was sentenced to a five-year term of imprisonment to be followed by a five-year special parole term. After serving only three years of the five-year prison term, he was paroled on September 16, 1987. In the following three years, Villarreal violated numerous terms of his parole, primarily by testing positive for non-prescribed controlled substances—including cocaine, marijuana and librium—and alcohol. Villarreal admitted using alcohol and marijuana, but denied cocaine use. In 1988, the United States Parole Commission threatened to revoke his parole but ultimately ordered Villarreal to participate in a drug dependency program. In 1989, two parole violation warrants were issued, which charged, *inter alia*, that Villarreal had failed to keep regular appointments for counseling and monitoring of his urine for prohibited substances, and that a parole officer had observed Villarreal under the influence of alcohol.[1] In late 1989, Villarreal was ordered to enter a residential substance abuse program. Within two weeks of entering the program, Villarreal was expelled for being intoxicated.

In early 1990, Villarreal failed three drug screenings and, without explanation, did not appear for two others. On February 27, 1990, Villarreal was arrested by Laredo, Texas police officers and charged with unlawfully carrying a weapon on licensed premises and with possession of marijuana. On the following day, yet another parole violation warrant was issued. Villarreal turned himself in to authorities on March 1, 1990.

On March 12, 1990, an informal preliminary hearing was conducted by an "impartial hearing officer"[2] to determine whether there was probable cause to revoke Villarreal's parole. At that hearing, Villarreal admitted that he had used the controlled drug librium without a prescription, which he claimed he used to help him break his alcohol dependency. He further admitted violating the terms of his parole, including frequently missing appointments with his drug counselor. He professed his innocence regarding the marijuana and firearms charges. The parole officer found that there was probable cause to believe that Villarreal had violated the terms of his parole, which was grounds for revocation.

Villarreal was thereafter transferred to the federal prison in Oakdale, Louisiana. On August 1, 1990, a formal parole revocation hearing was held. Immediately before the hearing, Villarreal signed a written waiver of both his right to representation by counsel and his right to introduce witnesses on his behalf. At the hearing, Villarreal again admitted taking a controlled drug without a prescription and violating the terms of his parole by failing to keep his numerous appointments with his drug counselor.

With respect to his arrest for possession of both a firearm and marijuana, Villarreal offered a letter from the Office of the District Attorney of the 49th Judicial District in Texas, which stated that the state

---

* District Judge of the Eastern District of Texas, sitting by designation.

1. For various reasons, these warrants were withdrawn.

2. *Morrissey v. Brewer*, 408 U.S. 471, 484-85, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972).

charges against Villarreal had been dropped. The letter stated that "[o]n April 19, 1990, David Arnold Koenig came forth and gave a sworn statement that he was the owner of the gun and that he had placed the gun in Villarreal's car. . . ." The letter failed to explain why the marijuana charge was dropped. At the parole revocation hearing, Villarreal also presented an affidavit from Koenig repeating the explanation for the presence of the weapon in Villarreal's automobile. After considering Villarreal's evidence, the hearing examiners recommended that Villarreal's parole be revoked. On August 17, 1990, the Regional Commissioner of the United States Parole Commission concurred, and Villarreal's parole was formally revoked. Villarreal appealed the revocation to the National Appeals Board, which affirmed the decision of the Parole Commission on December 18, 1990.

This habeas corpus action ensued. The district court adopted the recommended findings and conclusions of a federal magistrate and denied habeas relief. Villarreal appealed to this court.

## II.

Appearing *pro se*, Villarreal raises four distinct arguments supporting his petition for a writ of habeas corpus: i) the Parole Commission's failure to hold the parole revocation hearing within the ninety-day period required by 18 U.S.C. § 4214(c); ii) the National Appeals Board's failure to issue its order within the sixty-day period required by 18 U.S.C. § 4215(b); iii) the Parole Commission's failure to provide Villarreal a "local" revocation hearing; and iv) the Parole Commission's consideration of the state marijuana and firearms charges that had been dropped by the time of the revocation hearing. Villarreal also argues that the length of his sentence should be reduced because the violations of the terms of his parole were "technical." We address these five issues in turn.

**A. The Parole Commission's failure to conduct the revocation hearing within the 90–day period required by 18 U.S.C. § 4214(c)**

■ It is undisputed that the parole revocation hearing was not held until 154 days after Villarreal's arrest pursuant to the parole violation warrant. 18 U.S.C. § 4214(c) requires that the Parole Commission must conduct parole revocation hearings within ninety days of arrest. This court has long held that a violation of § 4214(c) presumptively establishes that the Parole Commission was unreasonable in failing to meet the ninety-day requirement. However, more than mere unreasonableness is required for a court to grant of habeas corpus relief to a federal parolee whose parole was revoked. The parolee must additionally show that actual prejudice was caused by the unreasonable delay. *See Frick v. Quinlin*, 631 F.2d 37, 39 (5th Cir.1980) ("In order to obtain judicial relief the parolee must show that the delay was both unreasonable and prejudicial."), *citing Smith v. United States*, 577 F.2d 1025 (5th Cir.1978).

■ Villarreal attempts to show actual prejudice by claiming that the sixty-four day excessive delay caused him to lose contact with three witnesses—David Koenig, Horacio Diaz, and Antonio Gonzales.[3] Not only did state authorities inform the Parole Commission that the gun which formed the basis of Villarreal's state firearm charge belonged to Koenig, but Koenig also submitted an affidavit explaining that the handgun was in fact Koenig's gun. Villarreal has not alleged any additional information that Koenig would have provided as a live witness. Antonio Gonzales is the owner of a grocery store in Texas and, according to Villarreal, would have testified that Villarreal was not carrying a weapon on the premises of Gonzales' A & O Grocery Store in Laredo, Texas.[4] Horacio Diaz was the drug counselor who moni-

3. We note that Villarreal signed a written waiver of his right to present live witnesses. On appeal, he claims that he did not have on his eye glasses and did not know what he was signing. Thus, we will only reach the merits of his claim in the alternative.

4. The basis of the state firearms charge was Villarreal's alleged possession of a firearm on premises licensed to distribute alcohol.

tored Villarreal's urinalyses. According to Villarreal, Diaz would have testified that Villarreal took librium to help control Villarreal's admitted alcohol problem.

We do not believe that Villarreal was prejudiced, even accepting his representations about the information that would have been supplied by these three witnesses. Villarreal has not alleged that Koenig would have testified about anything additional to the information contained in Koenig's affidavit and the letter from the district attorney's office. With respect to Diaz, Villarreal has *not* claimed that Diaz would have testified that Villarreal did not violate his parole terms regarding illicit drug use. Villarreal has never denied that he took the librium without a prescription. Finally, with respect to Gonzales, we believe that, while he may have been able to support Villarreal's position that the weapon was not his, Villarreal has *not* claimed that Gonzales could have explained the presence of the marijuana.[5] Because the Parole Commission, in rendering its decision to revoke Villarreal's parole, already had substantial evidence before it that proved that Villarreal was innocent of the weapons charge, we do not believe that Gonzales would have influenced the Parole Commission's decision.[6] Thus, we are unable to discern any prejudice suffered by Villarreal as a result of the Parole Commission's delay in conducting a revocation hearing.

B. The National Appeals Board's failure to render an order within the 60–day period required by 18 U.S.C. § 4215(b)

█ Villarreal also argues that habeas relief is appropriate in view of the National Appeals Board's failure to render a timely decision on Villarreal's appeal from the Parole Commission's decision to revoke his parole. The Government concedes that the National Appeals Board's decision denying relief was tardy by eighteen days. Although this court has never squarely addressed the issue of when habeas relief is appropriate when the National Appeals Board violates § 4215(b) in this manner, the Eleventh Circuit has addressed this precise issue. In *Judd v. Baer*, 911 F.2d 571 (11th Cir.1990), the court applied the same two-pronged test that this court announced in *Smith v. United States, supra.* We likewise believe that the *Smith* test applies equally in the context of violations of the respective time requirements prescribed by 18 U.S.C. § 4214(c) and 18 U.S.C. § 4215(b). Because Villarreal has not established prejudice resulting from the National Appeals Board's delay, there is no basis to grant habeas relief.

C. The Parole Commission's failure to hold a "local" revocation hearing

█ Villarreal contends that he was entitled to a revocation hearing held near his place of arrest pursuant to the parole violator warrant.[7] In *Morrissey v. Brewer*, 408 U.S. 471, 484–87, 92 S.Ct. 2593, 2601–03, 33 L.Ed.2d 484 (1972), the Court required that a preliminary "probable cause" revocation hearing must be held "near the place of the alleged parole violation." [8] The Court did not address the issue of whether the ultimate revocation hearing must be held reasonably near the place of the alleged parole violation.

---

5. Indeed, we observe that Villarreal has never offered anything but conclusory allegations that the marijuana was not his. Although the state firearms and marijuana charges were ultimately dropped—apparently because Koenig admitted that the handgun was his rather than Villarreal's—Koenig never claimed that the marijuana found in Villarreal's possession did not belong to Villarreal.

6. Villarreal errs by assuming that the Parole Commission's decision was based exclusively on the weapon's charge. In his brief, he states "appellant's revoked of parole [sic] was solely based" on the state charges. Villarreal inexplicably ignores the substantial evidence—including Villarreal's own admissions—that he had violated his parole terms by repeatedly using illicit drugs and alcohol. Evidence of Villarreal's apparent exoneration on the state weapon's charge, which was presented to the Parole Commission *before* his parole was revoked, was obviously not dispositive of the Commission's decision.

7. Villarreal indicated on a written form filled out prior to the hearing that he wished to have a local revocation hearing.

8. We observe that Villarreal's probable cause hearing was "local," i.e., in Laredo, Texas.

■ While the Supreme Court has been silent on this particular issue, a federal regulation enacted pursuant to the federal parole statutes does address the issue of when a local revocation hearing is required. *See* 28 C.F.R. § 2.49(a) & (c); *see also* 18 U.S.C. § 4214(a)(1)(B). Section 2.49(a) provides that a local revocation hearing is not required if either the parolee is convicted of a crime while on parole supervision *or* the parolee admits to violating "any" term or condition of parole. We observe that this regulatory provision antedates the Supreme Court's decision in *Morrissey v. Brewer, supra. See Mainer v. United States Attorney General*, 429 F.2d 389, 390 (5th Cir.1970). In *Mainer*, we held that the denial of a local revocation hearing pursuant to the regulatory precursor of § 2.49 did not violate due process. *Id.* at 390–91. Although *Mainer* is a pre-*Morrissey* case, *Mainer* generally requires the same procedural requirements for parole revocation that were adopted by the Supreme Court two years later in *Morrissey*. *See* 429 F.2d at 390 (citing *Hyser v. Reed*, 318 F.2d 225 (D.C.Cir.1963)). We continue to believe that the regulatory requirements set forth in § 2.49(a) & (c) comport with procedural due process. Because Villarreal admitted to numerous violations of the terms of his parole—in particular, drug use—we hold that he was not entitled to a local revocation hearing.

**D. The Parole Commission's consideration of the dismissed state charges**

■ Villarreal next argues that the Parole Commission should have entirely excluded the state firearm and marijuana charges from its deliberations over whether to revoke Villarreal's parole. While it is unclear whether the Commission gave any weight to the dismissed state charges, we will assume that they did give some weight to them, in particular to the marijuana possession charge. As we noted, *supra*, Villarreal has offered no proof that he was innocent of that charge.

■ In addressing this issue, we observe that our review of the decisions of the Parole Commission is quite circumscribed. We simply ask whether "there is some evidence" in the record to support the Commission's decision. Once that minimum threshold is met, we must affirm. *See Maddox v. United States Parole Commission*, 821 F.2d 997, 1000 (5th Cir.1987). As we discussed, *supra*, in Villarreal's case, wholly apart from the dismissed state charges, there is ample evidence supporting the Commission's decision—indeed, such evidence consists in part of Villarreal's own admissions. Furthermore, it is well established that the Parole Commission may consider evidence of parole violations even though such evidence was also considered by a criminal prosecuting authority that ultimately decided to dismiss criminal charges based on the same alleged conduct. Moreover, it was not as if Villarreal was acquitted of those charges. *Cf. Mack v. McCune*, 551 F.2d 251 (10th Cir. 1977). A criminal prosecution—governed by the reasonable doubt standard—and a parole revocation hearing are two very different proceedings. In the latter, the Government's "burden of proof" is considerably less. *See Maddox*, 821 F.2d at 999; *see also Mullen v. United States Parole Commission*, 756 F.2d 74 (8th Cir.1985); *Whitehead v. United States*, 755 F.2d 1536 (11th Cir.1985).[9] We believe that the Commission properly considered the dismissed state charges.

**E. Should Villarreal's sentence be reduced in view of the "technical" nature of the violations?**

In view of the serious nature of the narcotics conviction forming the basis of Villarreal's original conviction and sentence and Villarreal's repeated violations of the terms of his parole, we believe Villarreal's argument here is frivolous.

**III.**

For the foregoing reasons, we AFFIRM the judgment of the district court which

---

**9.** We also note that, notwithstanding the dismissal of the state firearm charge, there was "some evidence" in the record supporting the charge that the gun was in fact Villarreal's. Villarreal's own wife gave a confidential statement that the gun belonged to her husband.

dismissed Villarreal's petition for a writ of habeas corpus.