172 P.3d 493

**Michael Edward COULTER,
Petitioner/Petitioner–
Appellant**

v.

**STATE of Hawai'i,
Respondent/Respondent–Appellee.**

No. 27025.

Supreme Court of Hawai'i.

Nov. 30, 2007.

Phyllis J. Hironaka, Deputy Public Defender, (Sat K. Freedman, Deputy Public Defender, with her on the brief), for petitioner/petitioner-appellant.

Lisa M. Itomura, Deputy Attorney General, (Bryan C. Yee and Diane K. Taira, Deputy Attorneys General, with her on the briefs), for respondent/respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Petitioner Michael Edward Coulter seeks review of the Intermediate Court of Appeals' (ICA) January 22, 2007 judgment, which affirmed the circuit court of the first circuit's November 29, 2004 Findings of Fact, Conclusions of Law, and Order Denying Petition for Post–Conviction Relief.[1] We accepted Coulter's application for a writ of certiorari and vacate the judgment of the ICA.

Coulter asserts that the ICA gravely erred in affirming the circuit court order which denied his Hawai'i Rules of Penal Procedure (HRPP) Rule 40 Petition for post-conviction relief. Coulter argues that the manner in which the Hawai'i Paroling Authority (HPA) set his minimum terms of imprisonment was in violation of his constitutional rights, the applicable statute, and the HPA's own guidelines.

Because we agree that the HPA violated its guidelines in setting Coulter's minimum term, we reverse the judgment of the ICA, vacate the circuit court's order, and remand to the circuit court with instructions to order the HPA to provide Coulter with a new minimum-term hearing under Hawai'i Revised Statutes (HRS) § 706–669.

1. The Honorable Richard K. Perkins presided

## I. BACKGROUND

### A. Coulter's Minimum Term Hearing and Rule 40 Petition

In July 2002, Coulter pleaded guilty to one count of Negligent Homicide in the First Degree, in violation of HRS § 707–702.5 (1993), and one count of Accidents Involving Death or Serious Bodily Injury, in violation of HRS § 291C–12 (1993). The circuit court, in September 2002, sentenced Coulter to ten years of imprisonment for each count, to run concurrently.

Subsequently, in November 2002, Coulter received a notice informing him that the HPA would hold a hearing to fix his minimum term of imprisonment and explaining his rights in such a hearing. A later notice set the minimum term hearing date of January 6, 2003, which was continued until March 11, 2003 at Coulter's request. On January 7, 2003, Coulter's counsel sent copies of support letters, Coulter's autobiography, and two transcripts to the HPA for review by the HPA Board prior to the minimum term hearing.

Coulter appeared with counsel at the minimum term hearing that was held on March 11, 2003.

On March 15, 2003, the HPA issued a notice and order ("Order") setting Coulter's minimum terms of imprisonment at seven years for each count. The Order did not specify Coulter's level of punishment and the significant criteria upon which his minimum decision was based, as required by Section III of the HPA's 1989 Guidelines for Establishing Minimum Terms of Imprisonment.

Section III of the Guidelines, entitled "Issuance of Decision," states:

The Order Establishing Minimum Terms of Imprisonment (DOC # 10029) will include the specific minimum terms(s) [sic] established in years and/or months, the level of punishment (Level I, II, or III) under which the inmate falls, and the significant criteria upon which the decision was based.

HPA's Guidelines for Establishing Minimum Terms of Imprisonment (1989), *available at*

over this matter.

http://hawaii.gov/psd/documents/hpa/ Minimum_Guidelines.pdf [hereinafter, "HPA Guidelines"].

Coulter, acting pro se, filed a Rule 40 Petition challenging his minimum term order on August 21, 2003. In the petition, Coulter made six allegations, including claims that the HPA hearing did not comply with the statutorily-required procedural requirements, that the HPA violated his statutory right to be considered for parole, and that the minimum term established by the HPA violated his constitutional equal protection rights. Relevant to the present action, Coulter also challenged the Order itself, asserting (1) that he was placed into the wrong level of punishment, and (2) that the HPA failed to follow its guidelines when it set his minimum terms without stating in the Order Coulter's level of punishment or providing any written criteria upon which the HPA based its decision.

The State filed an answer to Coulter's petition on September 19, 2003 and a supplemental answer on December 4, 2003. Coulter filed replies to both answers.

On December 31, 2003, the HPA, sua sponte and without holding a hearing, issued an amended Notice and Order of Fixing Minimum Term(s) of Imprisonment ("Amended Order"). In the Amended Order the HPA set Coulter's minimum terms at seven years for each count, the level of punishment at Level III, and identified the significant factors used in determining Coulter's level of punishment as the nature of the offense and the degree of injury/loss to person.[2]

The circuit court held a hearing on Coulter's Rule 40 Petition on August 24, 2004. On November 29, 2004, the circuit court issued findings of fact, conclusions of law, and an order denying Coulter's petition.

### B. HPA Board Composition

The HPA is composed of three members, one of which serves as chairperson, and each of which is appointed for four-year terms. HRS § 353–61 (1993).

The March 15, 2003 order setting Coulter's minimum term of imprisonment was signed by the Acting Chair Mary Juanita Tiwanak. The letterhead at the top of the March Order also listed Lani Rae Garcia as an HPA member and Tommy Johnson as administrator.

The December Amended Order, on the other hand, was signed by Chairman Albert Tufono. The letterhead of that order indicates that the HPA at that time was composed of two other members, Dane K. Oda and Edward M. Slavish, as well as administrator Tommy Johnson. Therefore, none of the individuals who were HPA members at the time that the March Order was issued continued to be HPA members by December 2003, when the Amended Order was released.

### C. The ICA's Decision

Before the ICA, Coulter argued that the circuit court erred in denying his Rule 40 Petition because it wrongly concluded that (1) Coulter's constitutional rights to due process and equal protection were not violated and (2) the HPA properly followed its guidelines in identifying Coulter as a Level III offender. The ICA rejected these arguments, stating:

> Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we conclude that Coulter's contentions are without merit. The circuit court did not err in concluding that Coulter failed to prove facts sufficient to justify relief on any of his claims. Furthermore, the HPA did not abuse its discretion nor violate the constitutional rights of Coulter, in setting Coulter's minimum terms of imprisonment. *Williamson v. Hawaii Paroling Authority*, 97 Hawai'i 183, 195, 35 P.3d 210, 222 (2001).

ICA's SDO at 6.

We heard oral argument in this case on August 22, 2007.

---

**2.** This information was represented in the Amended Order in the following fashion:
Level of Punishment: Level III.

Significant factors identified in determining the level of punishment: 1) Nature of Offense; and 2) Degree of Injury/Loss to Person.

## II. *STANDARD OF REVIEW*

■ An HRPP Rule 40 petition is an appropriate means to challenge a minimum term of imprisonment set by the HPA. *Williamson v. Hawai'i Paroling Auth.*, 97 Hawai'i 156, 34 P.3d 1055 (App.2000), *rev'd on other grounds*, 97 Hawai'i 183, 35 P.3d 210 (2001).

■ "The disposition of an HRPP Rule 40 petition is based on FOF [findings of fact] and COL [conclusions of law]." *Raines v. State*, 79 Hawai'i 219, 222, 900 P.2d 1286, 1289 (1995). Accordingly, we review the circuit court's conclusions of law *de novo* and findings of fact for clear error. *See id.* (citing *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994)).

With respect to HPA decisions establishing a minimum term, this court has stated that "judicial intervention is appropriate where the HPA has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights." *Williamson*, 97 Hawai'i at 195, 35 P.3d at 222.

With respect to claims of procedural violations, the court will assess whether the HPA conformed with the procedural protections of HRS § 706–669 and complied with its own guidelines, which the HPA was required to establish by statute. HRS § 706–669(8) (1993).

## III. *DISCUSSION*

### A. *Coulter's Due Process Claim*

In his Application, Coulter separately challenges the March 2003 and December 2003 actions of the HPA, alleging that both were in violation of his due process rights. The challenges he mounts are based on three grounds: constitutional due process protections; violation of the HPA's own guidelines;

and violations of the statutory procedural requirements.

Although Coulter raises separate challenges to each of the two HPA actions, they are factually linked. Coulter asserts that the first violation was committed by the HPA board as composed on March 11, 2003, which issued the March 15, 2003 minimum-term order that failed to specify either the level of punishment or the significant criteria upon which the decision was based, both of which must be specified according to Section III of HPA's 1989 Guidelines. This failure, Coulter maintains, violated his due process rights.

The second violation was allegedly committed by the HPA board as composed on December 31, 2003, when it issued the Amended Order—maintaining the term decision but providing the level of punishment and significant criteria information—without providing the normal procedures set out in HRS § 706–669, such as notice and a hearing. Although the amended decision could be considered a "cure" of the conclusory March Order, Coulter contends that because the membership of the HPA completely changed in the interim, the decision was in reality a "new" decision for which he was entitled to another hearing under HRS § 706–669. As an alternative, Coulter argues that the mere fact that the HPA Board completely changed composition between the original and amended orders effected a violation of Coulter's due process rights. In support of this argument Coulter asserts that the new HPA Board had no basis to provide the justification for the decision of the original, March HPA Board, in the absence of a showing that it considered the evidence adduced at the March hearing before issuing the December Amended Order.[3]

### B. *The March Order Violated the HPA Guidelines.*

■ Because we find that the HPA's minimum term decision was in violation of the

---

3. In connection with this alternative claim, Coulter highlights as critically important what he terms "the complete lack of evidence that the 12/31/03 HPA Board reviewed or considered any of the evidence adduced at the 3/11/03 HPA hearing before issuing its 12/31/03 Amended Order." This fact is important, Coulter asserts,

because "the 12/31/03 HPA Board, not having been privy to the discussions of the 3/11/03 HPA Board, could not substitute its own reasoning (e.g. level of punishment and significant criteria upon which the minimums were based) in support of the 3/11/03 HPA Board's minimums."

HPA Guidelines, we do not reach the question whether the HPA violated Coulter's constitutional due process rights.

The HPA adopted the HPA Guidelines for Establishing Minimum Terms of Imprisonment pursuant to HRS § 706–669(8), which states:

> The authority shall establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character. The guidelines shall be public records and shall be made available to the prisoner and to the prosecuting attorney and other interested government agencies.

HRS § 706–669(8) (1993). Section III of the Guidelines, entitled "Issuance of Decision," states that "[t]he Order Establishing Minimum Terms of Imprisonment [ ] will include the specific minimum terms(s) . . ., the level of punishment . . ., and the significant criteria upon which the decision was based."

Coulter asserts that the HPA violated its guidelines because its March 2003 minimum term order failed to specify either the level of punishment or the significant criteria upon which the decision was based, as required by the HPA Guidelines. The failure to include this information, Coulter argues, was arbitrary and capricious.

 The proposition that the government must follow the rules it sets out for itself is not controversial. Here, where the legislature has delegated the creation of guidelines for the uniform determination of minimum sentences to the HPA, the HPA is not free to ignore the guidelines it has established. *Cf. Peek v. Thompson*, 160 Or.App. 260, 980 P.2d 178, 181 (1999) (plurality opinion) ("Even if an agency is not required to adopt a rule, once it has done so it must follow what it adopted."). Even though these guidelines do not have the force of statutory law, compliance with such rules is required to serve the legislature's goal of "uniform determination" of minimum sentences. HRS

§ 706–669(8). Indeed, this court[1] has described the availability of such guidelines as one of the procedural protections afforded to prisoners by statute. *See Williamson*, 97 Hawai'i at 194, 35 P.3d at 221. Deviating from such rules, without explanation, constitutes arbitrary or capricious action that violates a prisoner's right to uniform determination of his or her minimum sentence.[4] *See id.* at 195, 35 P.3d at 222 ("[J]udicial intervention is appropriate where the HPA has . . . acted arbitrarily and capriciously so as to give rise to a due process violation. . . .").

Nor does the State contest the fact that the March Order was not in conformity with the HPA Guidelines. The only remaining question, then, is whether any other consideration renders HPA's omission harmless or otherwise deprives Coulter of a remedy. The State makes two arguments: (1) that the deficiency was "cured" by the December 2003 order, rendering Coulter's complaint moot; and (2) that Coulter did not suffer any "actual prejudice" such that he is entitled to a remedy.

## C. The Amended December Minimum–Term Order Did Not "Cure" the Violation.

 The State argues that "at best, what [Coulter] is entitled to is to have the HPA reissue his minimum term order with the level of punishment and significant criteria stated, which is what the [HPA] did in issuing the 12/31/03 Notice."

In support of this argument, the State relies on the Utah Supreme Court's decision in *Preece v. House*, 886 P.2d 508 (Utah 1994). In *Preece*, a prisoner petitioned for habeas release after the parole board set his recommended sentence departing from the sentencing guidelines, but did not give an explanation for this departure as required by its rules. Agreeing that the board failed to comply with its rules, the Utah Supreme Court concluded that the petitioner was

---

4. The Guidelines themselves provide that the HPA may deviate either above or below the minimum term lengths that the Guidelines suggest, but that any such deviation "shall be accompanied by written justification and be made a part of the Order Establishing Minimum Terms of Imprisonment."

nonetheless not entitled to habeas relief on this ground, stating that

> the appropriate remedy in this case was to order the board to comply with its rules by giving Preece a written explanation for its decision to retain the October 1994 parole date. However, this relief " 'can no longer affect the rights of the litigants' " because the board gave Preece a written explanation for its decision during the pendency of this appeal. Therefore, this aspect of the petition is moot.

*Id.* at 512 (citation omitted).[5] The State argues that because the December Amended Order apparently satisfied the Guidelines by including the information missing from the earlier order, that Coulter received all the remedy to which he was entitled.

Without passing on the merits of the *Preece* analysis, it is clear that the procedural defects in this case distinguish Coulter's situation from that of the petitioner in *Preece*. Because the HPA, at the time it issued the Amended Order, consisted of completely different members, it is unclear whether the Amended Order reflected the same level of punishment and significant criteria "upon which the [original] decision was based." HPA Guidelines at 2. Moreover, the correction came a full nine months later, only after Coulter sought relief through a HRPP Rule 40 petition. Under these circumstances, the HPA has veered from the legislature's directive of "uniform determination" of minimum sentences, and the December Amended Order cannot be said to have "cured" the initial violation.

**D.** *Coulter Need Not Demonstrate Prejudice to Seek Relief from a Violation of HPA Guidelines.*

■ The State also argues that under *Monalim v. State*, 89 Hawai'i 474, 974 P.2d 1064 (App.1998), Coulter did not suffer a procedural due process violation because he has not shown that the HPA's actions caused him "actual prejudice." In *Monalim*, a pris-

oner raised constitutional, statutory, and administrative-rule based challenges to the failure of the HPA to hold his parole revocation hearing within the statutory and rule-based sixty-day period, when a power outage necessitated that the originally-scheduled hearing be cancelled. *Id.* at 475, 974 P.2d at 1065. The ICA remanded the case for further consideration after holding that:

> a petitioner is not entitled to relief for the HPA's failure to comply with the time limit specified in HRS § 706–670(7) unless the record shows that the failure to comply (1) was unreasonable and (2) caused the petitioner actual prejudice.

*Id.* In support of this proposition, the ICA relied on a case from the United States Court of Appeals for the Fifth Circuit, which held that a habeas petitioner is not entitled to habeas relief when the United States Penal Commission failed to grant a parole revocation hearing within ninety days of arrest but no actual prejudice to the petitioner was shown. *See Villarreal v. U.S. Parole Comm'n*, 985 F.2d 835, 837 (5th Cir.1993).

The present case is distinguishable from *Monalim*, as that case was confined to the parole revocation context and concerned a time delay rather than other procedural irregularities. The absence of the level of punishment and significant criteria information in Coulter's minimum term order infected the validity of the order itself in a very different way than would the procedural delay of such a hearing due to circumstances beyond the control of any party. When a hearing is merely delayed, it is unclear what purpose a remedy could serve where a proper hearing is eventually held and no prejudice results. In this case, however, it is possible that a new hearing could lead to a different minimum term order because the HPA's decision-making will be constrained by the requirement that it provide a basis for its decision, or otherwise explain a deviation from its guidelines. *See supra* note 4.

---

5. The court in *Preece* ultimately held, however, that the parole board violated his procedural and substantive due process rights under the Utah Constitution which entitle a prisoner to know, with reasonable advance notice, what informa-
tion the board will be considering at the original parole grant hearing. *Id.* at 512. On this ground, the court ordered a new hearing before the board. *Id.*

## IV. *CONCLUSION*

Therefore, the HPA's minimum term order was in violation of the HPA Guidelines. Accordingly, the ICA erred in affirming the ruling of the circuit court denying Coulter's HRPP Rule 40 petition.

The January 22, 2007 judgment of the ICA is vacated and the case is remanded to the circuit court to enter an order (1) vacating its November 29, 2004 order, and (2) directing the HPA to hold a new hearing to determine Coulter's minimum term of imprisonment, pursuant to HRS § 706–669.

