FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
28994
03-APR-2012
09:37 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

RAITA FUKUSAKU, Petitioner-Appellant,
vs.
STATE OF HAWAI'I, Respondent-Appellee.

NO. 28994

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPP NO. 07-1-0036 (CR NO. 94-0641))

APRIL 3, 2012

NAKAMURA, CHIEF JUDGE, LEONARD, J., AND CIRCUIT JUDGE KIM in
place of FOLEY, FUJISE, REIFURTH, AND GINOZA, JJ., all recused.

OPINION OF THE COURT BY NAKAMURA, C.J.

Petitioner-Appellant Raita Fukusaku (Fukusaku) was
convicted of two counts of second-degree murder. He was
originally sentenced by the Circuit Court of the First Circuit
(Circuit Court) to consecutive terms of life imprisonment with
the possibility of parole, subject to mandatory minimum terms of
fifteen years. With respect to Fukusaku's original sentence, the
Hawai'i Paroling Authority (HPA) set Fukusaku's minimum terms of
imprisonment before eligibility for parole on the two counts at
consecutive twenty-year terms, for an aggregate minimum term of

forty years of imprisonment. On appeal, the Hawai'i Supreme Court affirmed Fukusaku's convictions, but it vacated the mandatory minimum fifteen-year terms imposed by the Circuit Court and remanded the case for resentencing. State v. Fukusaku, 85 Hawai'i 462, 487-90, 500, 946 P.2d 32, 57-60, 70 (1997).

On remand, the Circuit Court resentenced Fukusaku to two consecutive terms of life imprisonment with the possibility of parole, but without any mandatory minimum terms of imprisonment. When Fukusaku appeared before the HPA to set his minimum terms of imprisonment after his resentencing, the HPA increased Fukusaku's minimum terms to consecutive twenty-five-year terms. The result of the HPA's action was to increase Fukusaku's aggregate minimum term before parole eligibility from forty to fifty years. In its February 24, 2005, written order fixing the minimum terms of imprisonment on Fukusaku's resentencing, the HPA did not cite any new information or changed circumstances not presented at the time of its original minimum term determination, but identified the "Nature of Offense" as the justification for its decision.

Fukusaku filed a petition to set aside the increased minimum terms of imprisonment established by the HPA on the ground that the HPA's decision was arbitrary and capricious. The Circuit Court denied Fukusaku's petition without a hearing, concluding that his allegations failed to present a colorable claim for relief. As explained in greater detail below, we hold that Fukusaku's petition presented a colorable claim for relief and therefore, the Circuit Court erred in denying Fukusaku's petition without a hearing. We vacate the Circuit Court's order denying Fukusaku's petition without a hearing, and we remand the case for further proceedings.

BACKGROUND

I.

In the underlying criminal case, Fukusaku was charged with one count of first-degree murder and two counts of second-degree murder. After a jury trial, Fukusaku was found guilty of

the two second-degree murder counts and was acquitted of the first-degree murder count. The Circuit Court originally sentenced Fukusaku to consecutive terms of life imprisonment with the possibility of parole on the two second-degree murder counts. The Circuit Court also originally imposed consecutive fifteen-year mandatory minimum terms of imprisonment on these two counts for the use of a firearm in committing each offense, pursuant to HRS § 706-660.1(1) (1993).

With respect to Fukusaku's original sentence, the HPA issued an order setting Fukusaku's minimum terms of imprisonment at consecutive twenty-year terms, for an aggregate minimum term of forty years. According to the HPA's order, Fukusaku's aggregate minimum term was scheduled to expire on August 1, 2033.

Fukusaku appealed his convictions and his original sentences. The Hawai'i Supreme Court affirmed Fukusaku's convictions, but held that the Circuit Court erred in imposing the mandatory minimum terms for use of a firearm, pursuant to HRS § 706-660.1(1), because the jury's verdicts failed to reveal whether Fukusaku had been found guilty as a principal or an accomplice. Fukusaku, 85 Hawai'i at 487-90, 946 P.2d at 57-60. The supreme court concluded that it was impossible to determine from the jury's verdicts whether the jury found that Fukusaku "was the principal who killed the [victims] with a firearm or that he was an accomplice who aided the commission of the crime in some other way." Id. at 489, 946 P.2d at 59. Based on its prior decision in Garringer v. State, 80 Hawai'i 327, 909 P.2d 1142 (1996), the supreme court ruled that because the imposition of the HRS § 706-660.1(1) mandatory minimum could not be based on accomplice liability and required a jury finding that Fukusaku used or possessed a firearm in committing the offenses, the mandatory minimum sentences imposed by the Circuit Court must be vacated. Fukusaku, 85 Hawai'i at 489-90, 946 P.2d 59-60. The supreme court withheld its judgment for thirty days to give the prosecution time to decide whether to retry Fukusaku to obtain the necessary jury findings to impose the mandatory minimums or

3

to consent to resentencing Fukusaku without the mandatory minimums. Id. at 490, 500, 946 P.2d at 60, 70. The prosecution chose to have Fukusaku resentenced without the mandatory minimums. Id. at 500, 946 P.2d at 70. Accordingly, the supreme court vacated the mandatory minimum terms imposed by the Circuit Court and remanded the case for the resentencing of Fukusaku without the mandatory minimum terms. Id.

On remand, the Circuit Court resentenced Fukusaku to two consecutive terms of life imprisonment with the possibility of parole, but this time without any mandatory minimum terms of imprisonment. Fukusaku again appealed. The Hawai'i Supreme Court, by summary disposition order filed on March 12, 1999, held that the Circuit Court had correctly resentenced Fukusaku and affirmed Fukusaku's judgment. State v. Fukusaku, No. 21475 (Hawai'i Mar. 12, 1999) (SDO).

On November 22, 2002, Fukusaku filed a petition for post-conviction relief pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40 (2000) (First Petition), challenging his convictions based on alleged perjured testimony given at his trial. On May 30, 2003, the Circuit Court denied Fukusaku's First Petition, and on appeal, this court issued a summary disposition order affirming the Circuit Court's decision. Fukusaku v. State, No. 26149, 2006 WL 2612685 (Hawai'i App. Sept. 12, 2006) (SDO).

In the meantime, on November 26, 2003, approximately six months after the Circuit Court denied Fukusaku's First Petition, Fukusaku appeared before the HPA for the setting of his minimum terms for parole eligibility pursuant to his resentencing. On December 10, 2003, the HPA issued an order setting Fukusaku's minimum terms at twenty-five years for each count. Notwithstanding the Circuit Court's imposition of consecutive sentences, the HPA's order reflected that the minimum terms expired concurrently for both counts on August 11, 2019. On February 24, 2005, the HPA issued a "corrected copy" of its minimum term order which reflected that the minimum terms were

4

consecutive twenty-five-year terms, with the minimum term on the first count to expire on August 11, 2019, and the minimum term on the second count to expire on August 4, 2044.[1] The only significant factor identified in the corrected order for determining the Level III level of punishment was "Nature of Offense."

II.

On September 5, 2007, Fukusaku, proceeding pro se, filed a second petition for post-conviction relief pursuant to HRPP Rule 40 (Second Petition), which is the petition at issue in this appeal. In his Second Petition, Fukusaku alleged that the HPA had set "arbitrary and capricious" minimum terms by increasing his minimum terms from twenty to twenty-five years on each count after he was resentenced. Fukusaku asserted that the "longer sentence" resulting from the increased minimum terms set by the HPA after his resentencing was "presumptively vindictive."

On January 23, 2008, the Circuit Court denied Fukusaku's Second Petition without a hearing by issuing its "Findings of Fact, Conclusions of Law, and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release from Custody" (Order Denying Second Petition).[2] The Circuit Court concluded that the allegations of Fukusaku's Second Petition failed to present a colorable claim for relief, and on that basis, the Circuit Court denied the Second Petition without a hearing.

III.

On appeal, Fukusaku argues that the Circuit Court erred in denying his Second Petition without a hearing, and he challenges the Circuit Court's conclusion that his petition failed to present a colorable claim for relief that would entitle

_____

[1] Fukusaku does not specifically challenge the HPA's "correction" of its order from concurrent to consecutive minimum terms, and we do not address it on appeal.

[2] The Honorable Michael D. Wilson presided over the proceedings relevant to this appeal.

5

him to a hearing. Fukusaku asserts that there was no new information to justify the HPA's increasing his aggregate minimum term of imprisonment by ten years after his resentencing and that the HPA's increase of his minimum terms was arbitrary and capricious to the point of violating his due process rights.

As explained below, we conclude that Fukusaku presented a colorable claim for relief and that the Circuit Court erred in denying his Second Petition without a hearing.

DISCUSSION

I.

A petition filed pursuant to HRPP Rule 40 is an appropriate means for a prisoner to challenge a minimum term of imprisonment set by the HPA. Coulter v. State, 116 Hawai'i 181, 184, 172 P.3d 493, 496 (2007). With respect to HPA decisions establishing a minimum term, "judicial intervention is appropriate where the HPA has failed to exercise any discretion at all, <u>acted arbitrarily and capriciously so as to give rise to a due process violation</u>, or otherwise violated the prisoner's constitutional rights." Williamson v. Hawai'i Paroling Auth., 97 Hawai'i 183, 195, 35 P.3d 210, 222 (2001) (emphasis added).

We review a trial court's denial of an HRPP Rule 40 petition without a hearing for failure to present a colorable claim *de novo*. Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim.[3] To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the [outcome of the challenged proceeding], however, a petitioner's conclusions need not be regarded as true. Where the

---

[3] HRPP Rule 40(f) (2006) provides in relevant part:

> **(f) Hearings.** If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. . . .

> examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.

Id. (emphasis omitted) (quoting State v. Allen, 7 Haw. App. 89, 92-93, 744 P.2d 789, 792-93 (1987); see State v. Bowers, 966 P.2d 1023, 1026 (Ariz. Ct. App. 1998) ("In order to receive an evidentiary hearing, the Petitioner must present a 'colorable claim' — one which, if true, would have changed the outcome of the proceeding.").

II.

A.

We begin our analysis with the United States Supreme Court decision in North Carolina v. Pearce, 395 U.S. 711 (1969). In Pearce, the Court considered the extent to which the Due Process Clause of the Fourteenth Amendment protects a criminal defendant who successfully attacks his or her conviction from the imposition of a more severe sentence after retrial. The Court stated that "it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." Id. at 723-24. The threat inherent in such a punitive policy would have a chilling effect on a defendant's exercise of his or her rights, and the imposition of a penalty upon the defendant for having exercised a statutory right of appeal or collateral remedy would violate due process. Id. at 724. The Court asserted:

> A court is "without right to . . . put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. . . . (I)t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice."

Id. (citation omitted; ellipsis points and parentheses in original).

> In light of these principles, the Court held:

> > Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

> > In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Id. at 725-26 (footnote omitted).

In subsequent cases, the United States Supreme Court described Pearce as applying a "presumption of vindictiveness" -- a presumption that a judge's imposition of a more severe sentence after a defendant's successful attack of his or her original conviction was based on an improper vindictive motive. United States v. Goodwin, 457 U.S. 368 373-74 (1982); Texas v. McCullough, 475 U.S. 134, 137-42 (1986). The Pearce presumption of vindictiveness is a rebuttable presumption and applies "only in cases in which a reasonable likelihood of vindictiveness exits." Goodwin, 457 U.S. at 373-74. Where the Pearce presumption does not apply, the defendant may still obtain relief by proving actual vindictiveness on the part of the sentencing judge. McCullough, 475 U.S. at 138; Wasman v. United States, 468 U.S. 559, 569 (1984).

In McCullough, the United States Supreme Court held that the evidence rebutting the Pearce presumption of vindictiveness was not necessarily limited to conduct on the defendant's part or events that occurred after the original

sentencing proceeding. McCullough, 475 U.S. at 141-44. The Court in McCullough noted that the literal application of such a limitation could lead to absurd results, and it concluded that a judge could rely upon new information or evidence, which involved the defendant's conduct or events that occurred before the original sentencing but had not been presented or considered at the original sentencing, to justify the imposition of a more severe sentence after retrial. Id. The Court clarified that the Pearce presumption of vindictiveness "may be overcome only by objective information justifying the increased sentence." Id. at 142 (internal quotation marks, citation, and ellipsis points omitted). It concluded that new objective information, which had not been presented or considered at McCullough's original sentencing, justified McCullough's increased sentence after his retrial. Id. at 136, 143-44.

B.

In his opening brief, Fukusaku cites Nulph v. Cook, 333 F.3d 1052 (9th Cir. 2003), in support of his claim that the Pearce presumption of vindictiveness was applicable to the HPA's setting of an increased aggregate minimum term after his resentencing.[4] However, the Pearce presumption of vindictiveness only applies in cases where there is a reasonable likelihood that the increased sentence was the product of vindictiveness. Goodwin, 475 U.S. at 373; Alabama v. Smith, 490 U.S. 794, 799 (1989). The United States Court of Appeals for the Ninth Circuit has held that the presumption of vindictiveness requires a triggering event that creates a motivation for self-vindication by the decision-maker, such as a defendant's successful challenge of the decision-maker's prior ruling. Fenner v. United States Parole Comm'n, 251 F.3d 782, 788 (9th

_____

[4] In Nulph, 333 F.3d at 1053-56, 1058, the court held that the Pearce presumption of vindictiveness applied where the Oregon State Board of Parole (Board) increased the defendant's minimum term of imprisonment from 30 years to 75 years after the defendant had successfully attacked the previous minimum term set by the Board.

Cir. 2001); see McCullough, 475 U.S. at 135-40 (concluding that the presumption of vindictiveness was inapplicable where a judge imposed a harsher sentence after a retrial than had previously been imposed by a jury); Colten v. Kentucky, 407 U.S. 104, 116-18 (1972) (concluding that the presumption of vindictiveness did not apply in a two-tiered system where a defendant who was convicted in an inferior court asked for a trial *de novo* in a superior court and received an increased sentence after the *de novo* trial). Absent a triggering event creating a motivation for self-vindication, the Pearce presumption of vindictiveness does not apply, and the defendant must assume the burden of proving actual vindictiveness. Fenner, 251 F.3d at 788-89.

Plaintiff-Appellee State of Hawai'i (State) argues that the Pearce presumption of vindictiveness does not apply to the HPA's decision to increase Fukusaku's aggregate minimum term after his resentencing because there was no triggering event creating a motivation for self-vindication by the HPA. The State observes that Fukusaku's successful appeal of his fifteen-year mandatory minimum terms to the Hawai'i Supreme Court challenged the sentence imposed by the Circuit Court, not any decision by the HPA, and therefore there was no triggering event to support the application of the presumption of vindictiveness.

In response, Fukusaku concedes in his reply brief that under current law, he is not entitled to a presumption of vindictiveness based on the Pearce line of cases. We conclude that this concession by Fukusaku is well taken as it is supported by United States Supreme Court and Ninth Circuit authority. See, e.g., McCullough, 475 U.S. at 135-40; Colten, 407 U.S. at 116-18; Goodwin, 475 U.S. at 373; Fenner, 251 F.3d at 788-89.

III.

Although the Pearce presumption of vindictiveness does not apply to HPA's decision to increase Fukusaku's aggregate minimum term, the HPA's decision would still be subject to invalidation if it was arbitrary and capricious so as to give rise to a due process violation. See Coulter, 116 Hawai'i at

184-85, 172 P.3d at 496-96; <u>United States ex rel. O'Connor v. MacDonald</u>, 449 F.Supp. 291, 296 (N.D. Ill. 1978) (concluding that the parole board's action in denying parole "is subject to judicial review in order to determine whether it has followed the appropriate criteria, rational and consistent with the applicable statutes, and that its decision is not arbitrary and capricious nor based on impermissible considerations" (cited with approval in <u>Turner v. Hawai'i Paroling Auth.</u>, 93 Hawai'i 298, 307-08, 1 P.3d 768, 777-78 (App. 2000)). In addition, Fukusaku would be entitled to overturn the HPA's decision if he could meet his burden of demonstrating actual vindictiveness on the part of the HPA. <u>See</u> <u>McCullough</u>, 475 U.S. at 138; <u>Fenner</u>, 251 F.3d at 788-89. Accordingly, Fukusaku was entitled to a hearing on his Second Petition if it presented a colorable claim that the HPA's decision to increase his aggregate minimum term was arbitrary and capricious so as to give rise to a due process violation or was based on actual vindictiveness.

A.

In evaluating whether Fukusaku's Second Petition presented a colorable claim for relief, it is necessary to consider the interests and policies implicated by the HPA's decision to increase Fukusaku's aggregate minimum term after he successfully appealed the original sentence imposed by the Circuit Court. The Hawai'i Legislature has chosen to impose statutory restrictions on a court's ability to resentence a defendant that go beyond the constitutional due process limitations established by <u>Pearce</u> and its progeny. While the <u>Pearce</u> line of cases would permit a court to impose a more severe sentence on a defendant after a successful appeal based on new information or changed circumstances justifying the increased sentence, <u>see</u> <u>Pearce</u>, 395 U.S. at 726; <u>McCullough</u>, 475 U.S. at 141-44, HRS § 706-609 (1993) precludes a court, under any

11

circumstances, from imposing a more severe sentence after a defendant's successful challenge to a conviction or sentence.

HRS § 706-609 provides:

> When a conviction or sentence is set aside on direct or collateral attack, the court shall not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence.

The commentary to HRS § 706-609 explains that there are three reasons for adopting this rule:

First,

> [t]he only argument which can justify an increase following a re-trial is that the original sentence was too light, either because the first judge was too lenient or because new facts have been presented. However, the only class of persons who are vulnerable to this argument consists of those who have exercised the right to challenge their convictions. There is no basis for believing that there exists any rational correspondence between this group and those offenders who may indeed deserve an increase.

HRS § 706-609 cmt. (ellipsis points omitted).

Second, "[t]he risk of a greater sentence as the result of the assertion of the right of review necessarily acts as a deterrent to the exercise of the right."  Id.

Third, a contrary position would require the difficult inquiry into the motivation of the judge who imposed the new sentence.  Id.  Although "it is . . . clear that greater punishment should not be inflicted on the defendant because he has asserted his right to appeal[,]" "some judges have imposed harsher sentences because of lack of sympathy with the constitutional rights asserted by some defendants, and in a frank attempt to minimize the numbers who will assert such rights in the future."  Id.  Therefore adopting a contrary position would "necessitate in every case a factual inquiry to determine the motivation of the judge who imposed the new sentence."  Id.

B.

However, in Keawe v. State, 79 Hawai'i 281, 901 P.2d 481 (1995), the Hawai'i Supreme Court, in construing HRS § 706-609, drew a clear distinction between the sentence imposed by a court and parole determinations.  The court stated that "the

terms 'parole' and 'sentence' should not be confused with each other[,]" and it noted that "[w]hile sentencing is the function of the judiciary, the granting of parole is generally the function of the executive branch of government, i.e., the Hawai'i paroling authority." Id. at 289, 901 P.2d at 489. The court held that "in light of the language of HRS § 706-609 and the clear distinction between sentencing and paroling, . . . HRS § 706-609 is inapplicable to cases where a new sentence, which is not more severe than a prior sentence, adversely affects a defendant's parole status." Id. at 290, 901 P.2d at 490. Because Keawe's maximum term of imprisonment was the same for both the prior and subsequent sentence, the court concluded that "Keawe did not receive a more severe 'sentence' in violation of HRS § 706-609." Id.

Based on Keawe, we conclude that HRS § 706-609 does not directly apply to the HPA's setting of a defendant's minimum term of incarceration. This conclusion is supported by the Legislature's intent, as reflected in statutes governing the HPA and the commentary thereto, to grant the HPA "broad discretion" and "exclusive authority" to determine a prisoner's minimum term of incarceration before eligibility for parole. Williamson, 97 Hawai'i at 189, 35 P.3d at 216 (citing HRS § 706-669 and the commentary thereto). If the Legislature intended to absolutely prohibit the HPA from setting an increased minimum term after a defendant's successful challenge to a conviction or sentence, it could have included such a prohibition in HRS § 706-609, along with the existing absolute prohibition against a court imposing a more severe sentence.

Thus, HRS § 706-609 does not directly apply to the HPA's decision to increase Fukusaku's aggregate minimum term after his resentencing. As previously discussed, the same is true of the Pearce presumption of vindictiveness. Nevertheless, we believe that the due process concerns underlying the Pearce presumption of vindictiveness and the legislative policies reflected by the enactment of HRS § 706-609 provide relevant

13

context and background for our analysis of the HPA's decision to increase Fukusaku's aggregate minimum term.

C.

Pearce concluded that a "defendant's exercise of a right of appeal must be free and unfettered" and that to avoid deterring or chilling a defendant from the exercise of that right, due process requires that a defendant "be freed of apprehension" that a sentencing judge will retaliate against a defendant for successfully pursuing an appeal. Pearce, 395 U.S. at 724-25. "In order to assure the absence of such a [retaliatory] motivation," the Court required as a protective measure that a judge's reasons for imposing a more severe sentence after a defendant's successful appeal be based on "objective information" and "affirmatively appear" in the record. Id. at 726. HRS § 706-609 goes beyond the protective measures set forth in Pearce by absolutely precluding the sentencing court from imposing an increased sentence after a defendant's successful challenge of his conviction or sentence. Like Pearce, HRS § 706-609 reflects a strong policy in favor of protecting a defendant's exercise of the right to challenge his or her conviction or sentence by restricting the sentencing court's discretion so as to guard against deterring or chilling a defendant's exercise of the right to mount such a challenge.

While distinctions can be drawn between a court's decision to impose a sentence and the HPA's decision to impose a minimum term of imprisonment, the same potential deterrent or chilling effect on a defendant's exercise of the right to challenge his or her conviction or sentence may arise out of either decision. Although the sentencing court establishes the maximum term of imprisonment a defendant can be required to serve, it is generally the HPA that determines when a defendant is released from incarceration and therefore how much time a defendant will actually serve in prison. Consequently, a defendant could certainly be chilled or deterred from exercising the right to challenge a conviction or sentence by fear or

14

apprehension that the HPA would increase the defendant's minimum term to punish him or her for challenging the conviction or sentence. It would provide little comfort to most defendants to be informed that although a defendant's court-imposed sentence could not be increased after a successful challenge to a conviction or court-imposed sentence, the HPA, without justification or meaningful review, could increase the defendant's minimum term of incarceration before eligibility for parole after such a successful challenge.

D.

The HPA's establishment of a prisoner's minimum term of incarceration is subject to statutory procedures, see HRS § 706-669 (1993 & Supp. 2011), and statutorily-required guidelines that reflect the Legislature's goal of uniform determination of minimum terms of incarceration. See Coulter, 116 Hawai'i at 185, 172 P.3d at 497.[5] This goal of uniform determination of minimum terms of incarceration logically applies not only to uniformity among similarly-situated defendants, but also to uniformity for the same defendant before and after a successful appeal. The statutory scheme and the guidelines also reflect the Legislature's intent that the HPA's setting of a prisoner's minimum term is a critical event in the parole process. See HRS §§ 706-669 and 706-670 (1993 & Supp. 2011). The statutory scheme and the guidelines create an expectation deserving of protection that the HPA's establishment of a minimum term of incarceration will not be increased arbitrarily and capriciously after a defendant's successful challenge to a court-imposed sentence.

_____

[5] In Coulter, the Hawai'i Supreme Court considered whether the HPA's actions were arbitrary and capricious when it issued an order setting Coulter's minimum term of incarceration, without specifying the level of punishment or the significant criteria on which the minimum term decision was based, in violation of the HPA's guidelines for establishing minimum terms. Coulter, 116 Hawai'i at 182, 184-85, 172 P.3d at 494, 496-97. The court held that given the Legislature's goal of uniform determination of minimum terms of incarceration, as reflected in its statutory mandate that the HPA establish minimum term guidelines, the HPA's "[d]eviating from such [guidelines], without explanation, constitutes arbitrary or capricious action that violates a prisoner's right to uniform determination of his or her minimum [term of incarceration]." Id. at 185, 172 P.3d at 497.

In addition, a criminal defendant has the right to appeal a conviction or sentence under HRS § 641-11 (Supp. 2011) and the right to seek post-conviction relief from a conviction or sentence under HRPP Rule 40 (2006). Permitting the HPA to increase a defendant's minimum term of incarceration after a successful challenge to a conviction or court-imposed sentence in a manner that is arbitrary and capricious or vindictive would chill and deter a defendant's exercise of these rights.

Under the particular circumstances of this case -- where the HPA is required to again set a defendant's minimum term only because the defendant successfully challenged a conviction or court-imposed sentence -- we conclude that it would be arbitrary and capricious for the HPA to impose an increased minimum term based on the same information it had when it imposed the original (lower) minimum term before the successful challenge. Based on the policies and due process concerns underlying HRS § 706-609 and Pearce, and the statutes and guidelines applicable to the HPA's establishment of a minimum term of incarceration, we conclude as follows: The HPA "act[s] arbitrarily and capriciously so as to give rise to a due process violation[,]" Williamson, 97 Hawai'i at 195, 35 P.3d at 222, when it increases a defendant's minimum term of incarceration after a resentencing occasioned by the defendant's successful appeal of a conviction or court-imposed sentence, without affirmatively justifying the increase in the record by identifying new objective information or changed circumstances not presented at the time the original minimum term was determined. The requirement that the HPA's justification for the increased minimum term appear in the record is necessary to permit meaningful judicial review of the HPA's decision, to further the legislative goal of uniformity in minimum term determinations, to protect the expectations arising from the original minimum term determination, to protect the defendant's exercise of his or her rights to challenge a conviction or

sentence, and to avoid unfairly chilling a defendant from exercising such rights.[6]

IV.

Here, Fukusaku successfully challenged his original sentence on appeal. The Hawai'i Supreme Court held that the Circuit Court erred in imposing mandatory minimum terms for use of a firearm because it was impossible to tell from the jury's verdicts whether Fukusaku was the principal who shot the victims or whether he was only guilty as an accomplice who aided the commission of the murders in some other way. Fukusaku, 85 Hawai'i at 487-90, 946 P.2d at 57-60. The supreme court's decision did not provide any basis for viewing Fukusaku as having an increased role in the offense, but could only serve to potentially mitigate his role by holding that the jury's verdicts could not necessarily be construed as a finding that Fukusaku had been the shooter. In accordance with the supreme court's decision, the Circuit Court removed the fifteen-year mandatory minimum terms but otherwise resentenced Fukusaku to the same two consecutive terms of life imprisonment with the possibility of parole.

Thus, when the HPA considered the setting of Fukusaku's minimum terms after his resentencing, the procedural posture of the case was that Fukusaku's original court-imposed sentences had been reduced by the removal of the statutory mandatory minimum terms. Nevertheless, the HPA increased Fukusaku's aggregate minimum term by ten years from forty to fifty years. In the February 24, 2005, order increasing Fukusaku's aggregate minimum term, the only significant factor that the HPA identified for "determining [the Level III] level of punishment" was "Nature of Offense." However, there is no indication that the nature of

---

[6] For purposes of our analysis, there is no significant difference between the current statutes and guidelines relevant to the HPA's determination of a minimum term of incarceration and the statutes and guidelines in effect when the HPA determined Fukusaku's minimum terms after his resentencing.

Fukusaku's offenses, or the HPA's information concerning the nature of these offenses, had changed in a manner detrimental to Fukusaku since the HPA's original determination of his minimum terms.  If anything, the supreme court's ruling that the jury's verdicts could not be construed as a finding by the jury that Fukusaku had used a firearm as a principal to kill the victims could only serve to potentially mitigate Fukusaku's role in the offenses.  The HPA's February 24, 2005, order did not provide any explanation besides the "Nature of Offense" for the HPA's decision to increase Fukusaku's aggregate minimum term by ten years.  The order did not justify the increased aggregate minimum term by identifying new objective information or changed circumstances that had not been presented to the HPA at the time it originally determined Fukusaku's aggregate minimum term before his successful appeal.

We conclude that Fukusaku's Second Petition presented a colorable claim that the HPA "acted arbitrarily and capriciously so as to give rise to a due process violation[,]" Williamson, 97 Hawai'i at 195, 35 P.3d at 222, by increasing Fukusaku's aggregate minimum term without providing an adequate justification.  We also conclude that given the lack of pertinent evidence in the record regarding the HPA's justification for the increased aggregate minimum term, Fukusaku's Second Petition presented a colorable claim of actual vindictiveness. Accordingly, we hold that the Circuit Court erred in denying Fukusaku's Second Petition without a hearing.

On remand, the Circuit Court shall hold a hearing to determine whether the HPA acted arbitrarily and capriciously or was motivated by actual vindictiveness in increasing Fukusaku's aggregate minimum term of imprisonment.  In making this determination, the Circuit Court shall ascertain whether the HPA affirmatively justified its decision to increase Fukusaku's aggregate minimum term in the record by identifying new objective information or changed circumstances that were not presented to the HPA at the time it made the original minimum term

18

determination before his successful appeal. The Circuit Court shall also consider whether there is evidence that the HPA's decision to increase Fukusaku's aggregate minimum term was motivated by an intent to punish Fukusaku for successfully challenging his court-imposed sentence. We note that the transcripts of the HPA's original minimum term hearing and its subsequent minimum term hearing after Fukusaku's resentencing were not part of the record. On remand, the parties will have the opportunity to present these transcripts and any other pertinent evidence to the Circuit Court.

CONCLUSION

For the foregoing reasons, we vacate the Circuit Court's Order Denying Second Petition, and we remand the case for further proceedings consistent with this opinion.

On the briefs:

Raita Fukusaku
Petitioner-Appellant Pro Se

Lisa M. Itomura
Diane K. Taira
Deputy Attorneys General
for Respondent-Appellee